UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO ELECTRIC POWER
AUTHORITY (PREPA),

                  Debtor.[1]

------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 4780-LTS

OPINION AND ORDER DENYING MOTION OF AD HOC GROUP OF PREPA BONDHOLDERS, ET AL.,
FOR RELIEF FROM THE AUTOMATIC STAY (DOCKET ENTRY NO. 74)

---

[1]     The last four (4) digits of PREPA's federal tax identification number are 3747.

APPEARANCES:

TORO, COLÓN, MULLET, RIVERA & SIFRE, P.S.C.

By: Manual Fernández-Bared
     Linette Figueroa-Torres
     Nayda Pérez-Román

P.O. Box 195383
San Juan, PR 00919-5383

*Attorneys for Movants Ad Hoc Group of PREPA Bondholders*

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: Gregory A. Horowitz
     Amy Caton
     Thomas Moers Mayer
     Natan Hamerman
     Alice J. Byowitz

1177 Avenue of the Americas
New York, NY 10036

*Attorneys for Movants Ad Hoc Group of PREPA Bondholders*

CASELLAS ALCOVER & BURGOS P.S.C.

By: Heriberto Burgos Pérez
     Ricardo F. Casellas-Sánchez
     Diana Pérez-Seda

P.O. Box 364924
San Juan, PR 00936-4924

*Attorneys for Movants Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

CADWALADER, WICKERSHAM & TAFT LLP

By: Howard R. Hawkins, Jr.
     Mark C. Ellenberg
     Nathan Bull
     Ellen Halstead
     Thomas J. Curtin
     Casey Servais

200 Liberty Street
New York, NY 10281

*Attorneys for Movants Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

ADSUAR MUNIZ GOYCO SEDA & PEREZ OCHOA PSC

By: Eric Pérez-Ochoa
     Luis A. Oliver-Fraticelli

208 Ponce de Leon Ave., Suite 1600
San Juan, PR 00936

*Attorneys for Movant National Public Finance Guarantee Corp.*

WEIL, GOTSHAL & MANGES LLP

By: Marcia Goldstein
     Jonathan Polkes
     Salvatore A. Romanello
     Gregory Silbert

767 Fifth Avenue
New York, NY 10153

    *and*

     Stephen Youngman
200 Crescent Court, Suite 300
Dallas, TX 75201-6950

|  |  |
|---|---|
|  | *Attorneys for Movant National Public Finance Guarantee Corp.* |
| GOLDMAN ANTONETTI & CORDOVA, LLC<br><br>By:  Carlos A. Rodríguez-Vidal<br>      Solymar Castillo-Morales<br>P.O. Box 70364<br>San Juan, PR 00936<br><br>*Attorneys for Movant Syncora Guarantee Inc.* | DEBEVOISE & PLIMPTON LLP<br><br>By:  My Chi To<br>      Craig A. Bruens<br>      Elie J. Worenklein<br>919 Third Avenue<br>New York, NY 10022<br><br>*Attorneys for Movant Syncora Guarantee Inc.* |
| O'NEILL & BORGES LLC<br><br>By:  Hermann D. Bauer<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918<br><br>*Attorneys for the Financial Management and Oversight Board as representative for PREPA* | PROSKAUER ROSE LLP<br><br>By:  Martin J. Bienenstock<br>      Paul V. Possinger<br>      Ehud Barak<br>      Maja Zerjal<br>Eleven Times Square<br>New York, NY 10036<br><br>*Attorneys for the Financial Management and Oversight Board as representative for PREPA* |
| CANCIO, NADAL, RIVERA & DÍAZ, P.S.C.<br><br>By:  Arturo Díaz Angueria<br>      Katiuska Bolaños Lugo<br>PO Box 364966<br>San Juan, PR 00936<br><br>*Attorneys for Puerto Rico Electric Power Authority* | GREENBERG TRAURIG, LLP<br><br>By:  Nancy A. Mitchell<br>      Nathan A. Haynes<br>200 Park Avenue<br>New York, NY 10166<br><br>     *and*<br><br>      David D. Cleary<br>      Kevin D. Finger<br>77 West Wacker Drive<br>Suite 3100<br>Chicago, IL 60601<br><br>*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* |

LAURA TAYLOR SWAIN, United States District Judge

The Ad Hoc Group of PREPA Bondholders, National Public Finance Guarantee Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Syncora Guarantee Inc. (collectively, the "Movants") have moved, pursuant to Section 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), made applicable by Section 301(a) of Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), for relief from the automatic stay to commence litigation against the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor") for the appointment of a receiver (the "Motion"). (Case No. 17 BK 4780 LTS, Docket Entry No. 74.) Movants represent, and the Debtor does not contest in the context of this motion practice, that Movants are holders and/or insurers of $5.3 billion (or 65%) of the $8.3 billion of bonds issued by PREPA, which is a public corporation and government instrumentality of the Commonwealth of Puerto Rico (the "Commonwealth").

The Court heard argument on the instant motion on August 8, 2017, and has considered carefully all of the arguments and submissions made in connection with the motion,[2] including the parties' post-argument supplemental submissions addressing the statutory interpretation issues that are the principal focus of this Opinion. To afford the Court adequate time to consider the issues raised in this motion practice, Movants waived the thirty (30) day statutory period set forth in 11 U.S.C. § 362(e). For the following reasons, the Motion is denied.

---

[2] In addition to the Movants' and Respondents' submissions, the Court has considered carefully the submissions of U.S. Bank National Association, in its Capacity as Trustee, Scotiabank de Puerto Rico, as Administrative Agent, Solus Alternative Asset Management LP, the Official Committee of Unsecured Creditors, and Instituto De Competitividad Y Sostenibilidad Economica De Puerto Rico.

BACKGROUND

The following recitation of facts is drawn from the Motion, except where otherwise noted.

PREPA was created under the Puerto Rico Electric Power Authority Act, Act No. 83 (the "Authority Act"), to own and operate production assets to provide electricity to 1.5 million customers in the Commonwealth. (Motion, p. 4.) The Authority Act authorized PREPA to issue bonds. PREPA issued $8.3 billion of revenue and revenue fund bonds (collectively, the "Bonds") pursuant to a trust agreement, dated January 1, 1974, by and between PREPA and U.S. Bank National Association, as successor trustee (the "Trust Agreement"). (Id.) Pursuant to the Trust Agreement, "[PREPA] . . . pledge[d] to the Trustee the revenues of the System, subject to the pledge of such revenues to the payment of the principal and the interest of the 1947 Indenture Bonds . . . and other moneys to the extent provided in this Agreement as security for the payment of the bonds and the interest . . . ." (See Trust Agreement, pp. 11-12, Exhibit B-1 to Motion.) In Section 502(b) of the Trust Agreement, PREPA covenanted, inter alia, to adjust rates and charges so that its revenues will be sufficient "to provide an amount at least equal to one hundred twenty per centum (120%) of the aggregate principal and Interest Requirements for the next fiscal year on account of all the bonds then outstanding under this Agreement, reduced by the any amount deposited to the credit of the Bond Service Account from the proceeds of bonds to pay interest to accrue thereon in such fiscal year." (See Trust Agreement, § 502(b), Exhibit B-2 to Motion.) Section 802 of the Trust Agreement lists the events of default, including non-payment. (See Trust Agreement § 802, Exhibit B-3 to Motion.) Section 804 of the Trust Agreement provides for the remedies, including initiating a proceeding for appointment of a receiver of the "undertakings, or parts thereof, the income or revenues of which are pledged to

the payment of the bonds so in default," upon an event of default. (See Trust Agreement § 804, Exhibit B-3 to Motion; see also 22 L.P.R.A. § 207). Such a receivership application is authorized by the Authority Act, which provides that "[u]pon such application the court may appoint, and if the application is made by the holders of twenty-five (25% ) per centum in principal amount of such bonds then outstanding, or by any trustee for holders of bonds in such principal amount, shall appoint a receiver of such undertakings." 22 L.P.R.A. § 207(a). The Authority Act further provides that such a receiver "shall forthwith, directly or by his agents and attorneys, enter into and upon and take possession of such undertakings and each and every part thereof, and may exclude the Authority, its Board, officers, agents, and employees and all persons claiming under them, wholly therefrom and shall have, hold, use, operate, manage, and control the same and each and every part thereof, and, in the name of the Authority or otherwise, as the receiver may deem best, shall exercise all the rights and powers of the Authority with respect to such undertakings as the Authority itself might do." Id. § 207(b).

Movants argue, in summary, that the Bonds are secured by (i) "a lien on revenues generated by the utility system;" (ii) "a covenant that the utility will maintain rates at a level sufficient to cover debt service"; and (iii) "the right to require a court of competent jurisdiction to appoint a receiver if the utility is in default." (Motion, p. 5.) PREPA, which commenced its debt adjustment proceeding under Title III of PROMESA on July 2, 2017, defaulted on the payment due to its bondholders on July 3, 2017. PREPA has not increased its base rate for electric service in 26 years (from 1989 through 2015). (Id., p. 10.) PREPA's current fiscal plan (the "Fiscal Plan"), which has been certified, subject to amendments, under PROMESA by the Financial Oversight Management Board for Puerto Rico ("Oversight Board") established under

PROMESA,[3] contemplates debt service relief from its bondholders through 2022; PREPA proffers that its economic analysis indicates that near-term rate increases would be deleterious to Puerto Rico's prospects for economic recovery.

Movants attribute PREPA's financial distress to historic mismanagement and political domination of its staffing and governing board, and contend that neither factor is being remedied by steps taken under the Fiscal Plan. In particular, Movants cite Puerto Rico's current Governor's decision not to renew the tenure of an outside Chief Restructuring Officer who had been in place for approximately three years, his recent dismissals and appointments of PREPA board members and operational leadership, and the Oversight Board's rejection of a Restructuring Support Agreement that had been negotiated over a period of three years and had the support of a significant proportion of PREPA's creditor body, as indicative of a need for appointment of a receiver to manage the utility and seek rate increases to protect the economic rights of Bondholders. The Oversight Board and PREPA, represented here by the Puerto Rico Fiscal Agency and Financial Advisory Authority, oppose Movants' request for relief. The Oversight Board asserts that the Commonwealth will not be sustainable until economic growth reaches 0.8% per year and that an increase in electricity prices beyond 21.4 cents per kilowatt-hour will create a high risk that Puerto Rico will not become fiscally sustainable. (See Oversight Board Obj., p. 16.) The Oversight Board also asserts that restraint from increasing electricity rates is in the best interests of PREPA, the Commonwealth and PREPA's creditors. (Id.)

---

[3] To be eligible for confirmation under PROMESA, a debtor's plan of adjustment must be consistent with the applicable certified Fiscal Plan. See PROMESA § 315(b)(7).

DISCUSSION

Section 362(a) of the Bankruptcy Code, made applicable by Section 301(a) of PROMESA, imposes an automatic stay on "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . ." 11 U.S.C.S. § 362(a)(1) (LexisNexis 2009 & Supp. 2017); see also PROMESA § 301(a). Section 362(d)(1) of the Bankruptcy Code, also made applicable in these proceedings by Section 301 of PROMESA, permits a court to grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property." 11 U.S.C.S. § 362(d)(1) (LexisNexis 2009 & Supp. 2017).

Movants argue that, as holders and/or insurers of 65% of the Bonds, they are entitled to invoke the Authority Act provision requiring the appointment of a receiver upon the request of the holders of 25% of the outstanding principal amount of the PREPA Bonds. (Motion, p. 7.) Movants allege that "cause" exists to lift the automatic stay to permit them to commence a lawsuit in a court of competent jurisdiction to appoint a receiver because, among other things, (i) the value of their collateral is being diminished by PREPA's current and historic failures to raise electric rates sufficiently to service both its operating costs and bond debt and (ii) historic and continuing mismanagement of PREPA that has caused the utility to suffer from, among other things, poor collection of outstanding accounts receivable and inadequate system reliability. (Id., pp. 9-10 & 16.)

To determine whether there is cause to lift the bankruptcy stay, the Court examines the factors first enumerated by the United States Court of Appeals for the Second Circuit in In re Sonnax Indus., Inc., 907 F.2d 1280, 1286 (2d Cir. 1990) ("Sonnax"). See, e.g., Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla, 217 F. Supp. 3d 508, 518

(D.P.R. 2016) (citing Sonnax).[4] A factor of particular relevance to evaluation of the instant Motion is the "impact of the stay on the parties and the balance of harms." Sonnax, 907 F.2d at 1286. In the context of this public debt adjustment proceeding under PROMESA, however, the Court must first examine the antecedent question of whether the Court is empowered to exercise the general statutory authority conferred by Section 362 of the Bankruptcy Code to lift the stay to permit the fundamental management and revenue base changes sought by Movants.

The Court thus considers the impact of Sections 305 and 306 of PROMESA. The former provision, which has no counterpart in the provisions of the Bankruptcy Code that govern the liquidation and reorganization of private entities, is drawn from Section 904 of the Bankruptcy Code, a part of the chapter of the Bankruptcy Code that governs municipal bankruptcy. Section 305 imposes express limitations on the power of the PROMESA Title III court. Section 306 places all property of the debtor under the exclusive jurisdiction of the court.

---

[4] The twelve Sonnax factors are:

    (i)    whether relief would result in a partial or complete resolution of the issues;
    (ii)   the lack of any connection or interference with the bankruptcy case;
    (iii)  whether the other proceeding involves the debtor as a fiduciary;
    (iv)  whether there is a specialized tribunal with the necessary expertise has been established to hear the cause of action;
    (v)   whether the debtor's insurer has assumed full responsibility for defending it;
    (vi)  whether the action involves primarily third parties;
    (vii)  whether litigation in another forum would prejudice the interests of other creditors;
    (viii) whether the judgment claim arising from the other action is subject to equitable subordination;
    (ix)  whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
    (x)   the interests of judicial economy and the expeditious and economical resolution of litigation;
    (xi)  whether the parties are ready for trial in the other proceedings; and
    (xii) the impact of the stay on third parties and the balance of harms.

Sonnax, 907 F. 2d at 1286.

Together, and with other provisions of PROMESA, they create a statutory structure that is deeply respectful and protective of the autonomy of public entities engaged in debt adjustment proceedings. Indeed, the origins of Section 305's Chapter 9 counterpart can be traced directly to congressional efforts to avoid infringing on the sovereignty of states, from which the authority of counties and municipalities is derived. See In re City of Stockton, 478 B.R. 8, 17-20 (Bankr. E.D. Ca. 2012). In enacting PROMESA, Congress chose to grant the governmental authority and the property of territories and their instrumentalities the same level of protection during Title III debt adjustment proceedings.

Section 305 of PROMESA provides that, "notwithstanding any power of the court, unless the Oversight Board consents or [the debtor's Title III] plan [of adjustment] so provides, the court may not by any stay, order or decree, in the case or otherwise, interfere with – (1) any of the political or governmental powers of the debtor; (2) any of the property or revenues of the debtor; or (3) the use or enjoyment by the debtor of any income-producing property." PROMESA § 305. The Debtor here, PREPA, is a government instrumentality of the Commonwealth, exercising governmental powers in providing electrical service to the inhabitants of the Commonwealth, using its property to generate that power and deriving income from the sale of the power so generated. The rates it charges for its services define the magnitude and impact of its principal revenues. The relief that Movants seek – permission to require the appointment of a receiver to manage PREPA's operations and seek the approval of rates higher than those PREPA has thus far chosen to charge – is facially inconsistent with Section 305 of PROMESA. Section 305 bars the Court, "notwithstanding any power of the court," from using "any . . . order or decree, in the case or otherwise," to interfere with such

basic functions and assets of PREPA absent the Oversight Board's consent, which has not been given here.

Movants argue that Section 305 does not limit the Title III court's power to lift the automatic stay, asserting that the inclusion of Bankruptcy Code Section 362 in PROMESA indicates that Congress intended that stay relief be available in Title III proceedings and that "a court would never be able to lift the stay" if "Section 305 were construed as preventing a court from lifting the stay when the result may be a decision from another tribunal that may impact the debtor's property or revenues." (Movants' Supp. Br., p. 6.) Indeed, Movants assert that such a reading of Section 305 would prohibit even the dismissal of a case, since dismissal "would allow creditors to exercise remedies that could impact the debtor's property or revenues." (Id. n.6.) Neither argument bears its own weight. Interference, not impact, is the issue under Section 305, which does not preclude all relief from the automatic stay. First, Section 305 clearly permits stay relief to which the Oversight Board consents. Furthermore, some types of stay relief, such as to permit determinations of legal rights or to liquidate disputed claims that will then be dealt with in the Title III claims process, do not necessarily interfere with governmental authority, revenues or property. The dismissal of a case, which would end the Title III proceeding, would indeed permit creditors to exercise remedies that are stayed while Title III proceedings are ongoing, for the simple reason that the Title III case and its attendant protections – including that of Section 305 – would have ceased prior to the invocation of the remedies. Movants' additional arguments for denying Section 305 the force of its plain text are similarly unavailing.[5]

---

[5] Movants' reliance on dicta from In re Jefferson Cty., Ala., a decision that denied stay relief to continue the appointment of a receiver, that suggested stay relief might be considered at a future point in time in the event of poor management, and In re Orange County, a case in which the municipal debtor had consented to adequate protection relief for the creditor, is misplaced.

It is clear that Section 305 prohibits this Title III court from transferring control of PREPA's management and property to a receiver without the Oversight Board's consent: Section 305's "or otherwise" language prohibits indirect achievement of what this Court could not do directly.[6] Section 305, along with PROMESA's Title III provisions limiting the power to formulate a debt adjustment plan to the governmental debtor (see PROMESA §§ 312, 313), protects the authority of the people's elected officials and their appointees to direct the restructuring effort. Creditors may engage with the governmental debtor in that process, and may be heard in opposition to actions they contend are inconsistent with the requirements of law, but they cannot, through invocation of the Court's powers, wrest control of governmental functions, revenues or property, from the governmental debtor. See City of Detroit, 841 F.3d at 696, 698 (holding that the plain language of Section 904 of the Bankruptcy Code limits the bankruptcy court's authority to interfere with governmental powers, property or revenues of the debtor or use of income-producing property, affirming district court's order dismissing plaintiff's request for injunctive and declaratory relief); City of Stockton, 478 B.R. at 21 (holding that

---

See In re Jefferson Cty., Ala., 474 B.R. 228, 286 (Bankr. N.D. Ala. 2012); In re Cty. of Orange, 179 B.R. 8, 22 (Bankr. C.D. Cal. 1995). Similarly, the Sixth Circuit's suggestion in In re City of Detroit that a motion for relief from stay might be an appropriate procedural vehicle for seeking permission to pursue mandatory relief with respect to the provision and pricing of water service is not necessarily an indication that the court believed that such motion practice would be successful. See City of Detroit, 841 F.3d 696, 698 n.6. (6th Cir. 2016).

[6] See also Bankruptcy Code section 105(b), which is incorporated into PROMESA by Section 301 of that statute and denies the court power to appoint a receiver "in a case." 11 U.S.C.S. § 105(b); 48 U.S.C. § 2161. The section 105(b) provision may not preclude all receiverships, as it has been interpreted to apply to displacement of a bankruptcy trustee's powers in an entire case as opposed to such an appointment in the context of a separate controversy with a particular creditor. But see In re Memorial Estates, Inc., 797 F.2d 516, 520 (7th Cir. 1986) (stating that "[t]he power cut off by section 105(b) of the Bankruptcy Code is the power to appoint a receiver for the bankrupt estate, that is, a receiver in lieu of a trustee," but cautioning that "if . . . the property involved in the dispute is the bankrupt's main asset, the appointment of the receiver may be an abuse of the district court's appointive power, because the appointment may have the effect of emasculating the trustee's role").

Section 904 of the Bankruptcy Code barred the bankruptcy court from granting employees' request for injunctive relief in connection with the city's unilateral reduction of retiree health benefits); In re Addison Cmty. Hosp. Auth., 175 B.R. 646, 649 (Bankr. E.D. Mich. 1994) (in denying non-creditor group's motion to intervene, noting that Section 904 of the Bankruptcy Code "makes clear that the court may not interfere with the choices a municipality makes as to what services and benefits it will provide.").

Congress, similarly, denied the Title III court power to displace PREPA's management, even for misconduct, by omitting Section 1104 of the Bankruptcy Code, which provides for the appointment of a trustee or an examiner in a Chapter 11 bankruptcy case, from the Bankruptcy Code provisions incorporated into PROMESA's statutory scheme. Instead, Section 301(c)(7) of PROMESA specifically designates the Oversight Board as the sole "trustee" under PROMESA. See PROMESA § 301(c)(7). Movants' request to lift the automatic stay to commence a lawsuit to appoint a receiver to manage PREPA is thus inconsistent not only with Section 305, but with the structure of PROMESA, which does not confer judicial power to appoint a receiver, trustee, another manager or other responsible officer (see Section 1104 of the Bankruptcy Code) in place of the Oversight Board, and prohibits interference by the Title III court with governmental powers, revenues and property. See City of Detroit, 841 F.3d at 696, 698. In providing such protected status for the governmental entity along with responsibility to propose a confirmable adjustment plan and an overall statutory goal of "achiev[ing] fiscal responsibility and access to the capital markets,"[7] Congress indicated that it expected the powers of the Oversight Board and the Title III debtor to be used in a manner consistent with the long

---

[7] PROMESA § 101(a).

term health of the Commonwealth, its instrumentalities and their relationships with their creditors.

These same considerations of locus of control during the Title III process lead the Court to conclude that the balance of harms weighs heavily against the grant of stay relief here to the extent the Court has any power to grant such relief. The relief Movants seek, which is expressly designed to facilitate an increase in electricity rates over and above those contemplated by PREPA's management and Fiscal Plan, would run counter to PROMESA's designation of PREPA, a governmental instrumentality exercising governmental powers, as the sole entity empowered to develop and propose a plan of adjustment, and is likewise inconsistent with PROMESA's requirement that a confirmed plan of adjustment be consistent with the debtor's certified Fiscal Plan. See PROMESA §§ 313, 314(b)(7). These realities belie the Movants' assertions that they would not impede the Oversight Board's powers or the debt adjustment process by securing the appointment of a receiver to force a rate increase. While Movants must suffer the temporary burden of cessation of payments pending the Title III proceedings unless PREPA decides to resume them in whole or in part, no permanent change in the bondholders' rights can be imposed absent a confirmed plan or voluntary agreement. Title III grants the bondholders rights and opportunities to be heard in connection with these processes. The potential harm that stay relief would wreak on PREPA's ability to exercise its powers and responsibilities as a Title III debtor far outweighs the temporary impediments imposed on the bondholders.

Movants' request for leave to seek the appointment of a receiver presents a jurisdictional conundrum that also points to denial of the requested relief. Section 306 of PROMESA provides that "[t]he district court in which a case under this title is commenced or is

pending shall have exclusive jurisdiction of all property, wherever located, of the debtor as of the commencement of the case." See PROMESA § 306(b). Section 306 of PROMESA parallels 28 U.S.C. § 1334(e)(1), which provides that "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction – (1) of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate . . . ." 28 U.S.C.S. § 1334(e)(1) (LexisNexis 2003 & Supp. 2016). As at the commencement of a voluntary case under the Bankruptcy Code, the property that may be used to effect the adjustment of the debtor's relationship with its creditors comes under the exclusive jurisdiction of the court. See Taylor v. Sternberg, 293 U.S. 470, 472 (1935) (noting that upon the bankruptcy filing, "the property of the bankrupt rests in the trustee as of the date of the filing of the petition . . . . and the "jurisdiction of the bankruptcy court becomes paramount and exclusive").

A grant of relief from stay to permit Movants to seek the appointment of a receiver would of necessity require this Court to cede jurisdiction of PREPA's property in the form of operating assets and revenues to another court since, as explained above, this Court lacks the power to enter orders and decrees interfering with the debtor's governmental authority and control of its property. A receiver holds property as representative of the appointing court and is answerable to the appointing court. Taylor, 293 U.S. at 471-72. Given Section 305's limitation on judicial interference and the impediments receiver control of the Title III debtor and its assets would present to the formulation of a confirmable plan of adjustment, ceding such power to a non-Title III court would be fundamentally inconsistent with, and harmful to, the protections, structure and goals of the PROMESA debt adjustment process into which PREPA has entered. Cf. Jefferson Cty., 474 B.R. at 283 ("When one realizes that such a transfer limits, complicates and places at risk the ability of the County to adjust its debts in one setting, it defeats one of the

primary benefits of having a bankruptcy case."). Therefore, even if and to the extent the Court has power to grant Movants' request, stay relief to apply for the appointment of a receiver is denied for lack of cause.

## CONCLUSION

For the foregoing reasons, Movants' motion for relief from the automatic stay is denied. This Opinion and Order resolves docket entry no. 74 in case no. 17-4780.

SO ORDERED.

Dated: September 14, 2017

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge