UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO et al.,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283 (LTS)<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 17-BK-4780 (LTS) |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

|  |  |
|---|---|
| UNIÓN DE TRABAJADORES DE LA INDUSTRIA ELÉCTRICA Y RIEGO, INC., ÁNGEL FIGUEROA-JARAMILLO, as President of UNIÓN DE TRABAJADORES DE LA INDUSTRIA ELÉCTRICA Y RIEGO, INC., FREDDYSON MARTÍNEZ-ESTEVEZ, Vice President of UNIÓN DE TRABAJADORES DE LA INDUSTRIA ELÉCTRICA Y RIEGO, INC, RALPHIE DOMINICCI-RIVERA, WALDO ROLÓN, and RONALD VÁZQUEZ, as Vice President of the Retirees Chapter of UNIÓN DE TRABAJADORES DE LA INDUSTRIA ELÉCTRICA Y RIEGO, INC., <br><br> Plaintiffs, <br><br> -v- <br><br> PEDRO R. PIERLUISI-URRUTIA, in his official capacity as Governor of the Commonwealth of Puerto Rico, COMMONWEALTH OF PUERTO RICO, PUERTO RICO ELECTRIC POWER AUTHORITY, THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of PUERTO RICO ELECTRIC POWER AUTHORITY, RALPH A. KREIL-RIVERA, in his official capacity as the President of the Governing Board of the PUERTO RICO ELECTRIC POWER AUTHORITY, EFRAN PAREDES-MAYSONET, in his official capacity as Executive Director of PUERTO RICO ELECTRIC POWER AUTHORITY, PUERTO RICO PUBLIC PRIVATE PARTNERSHIP AUTHORITY, FERMÍN FONTÁNES-GÓMEZ, in his official capacity as Executive Director of PUERTO RICO PUBLIC PRIVATE PARTNERSHIP AUTHORITY, PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY, OMAR J. MARRERO-DÍAZ, in his official capacity as Executive Director of PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY, LUMA ENERGY, LLC, LUMA ENERGY, SERVCO, LLC, and WAYNE STENSBY, in his official capacity as President and CEO of LUMA ENERGY, LLC and LUMA ENERGY SERVCO, LLC., <br><br> Defendants. | Adv. Proc. No. 21-41 (LTS) |

| | |
|---|---|
| SISTEMA DE RETIRO DE LOS EMPLEADOS DE LA AUTORIDAD DE ENERGÍA ELÉCTRICA; THE BOARD OF TRUSTEES OF THE PUERTO RICO ELECTRIC AUTHORITY EMPLOYEES' RETIREMENT SYSTEM; JOSÉ RAMÓN RIVERA-RIVERA; RALPHIE DOMINICCI-RIVERA; ERASTO ZAYAS-LÓPEZ; JUAN CARLOS ADROVER; SAMMY RODRÍGUEZ; TRUSTEES AND FIDUCIARIES OF THE ELECTRIC POWER AUTHORITY EMPLOYEES' RETIREMENT SYSTEM, | Adv. Proc. No. 21-49 (LTS) |

Plaintiffs,

-v-

PEDRO R. PIERLUISI-URRUTIA, in his official capacity as Governor of the Commonwealth of Puerto Rico; COMMONWEALTH OF PUERTO RICO; PUERTO RICO ELECTRIC POWER AUTHORITY; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of PUERTO RICO ELECTRIC POWER AUTHORITY; RALPH A. KREIL-RIVERA, in his official capacity as the President and Executive Director of the Governing Board of the PUERTO RICO ELECTRIC POWER AUTHORITY; PUERTO RICO PUBLIC PRIVATE PARTNERSHIP AUTHORITY; FERMÍN FONTANÉSGÓMEZ, in his official capacity as executive director of PUERTO RICO PUBLIC PRIVATE PARTNERSHIP AUTHORITY; PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY; OMAR J. MARRERO-DÍAZ, in his official capacity as executive director of PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY, LUMA ENERGY; LLC, LUMA ENERGY, SERVCO, LLC; and WAYNE STENSBY, in his official capacity as President and CEO of LUMA ENERGY, LLC and LUMA ENERGY SERVCO, LLC.

Defendants.

OPINION AND ORDER GRANTING MOTIONS TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(B)(6)

APPEARANCES:

BUFETE EMMANUELLI C.S.P.
By:     Rolando Emmanuelli-Jiménez
          Jessica Méndez-Colberg
472 Tito Castro Ave.
Marvesa Building, Suite 106
Ponce, Puerto Rico 00176

*Counsel for UTIER,*
*Ángel Figueroa-Jaramillo,*
*Freddyson Martínez-Estevez,*
*Ralphie Dominicci-Rivera,*
*Waldo Rolón, and Ronald Vázquez*
*Counsel for SREAEE,*
*Ángel Figueroa-Jaramillo,*
*Freddyson Martínez-Estevez,*
*Ralphie Dominicci-Rivera,*
*Waldo Rolón, and Ronald Vázquez*

RAFAEL A. ORTIZ-MENDOZA
By:     Rafael Ortiz-Mendoza
Edificio Banco Cooperativo Plaza
623 Ave. Ponce de León, Suite 501-A
San Juan, Puerto Rico 00917-4805

*Attorney for Plaintiffs Board of Trustees,*
*José Ramón Rivera-Rivera,*
*Ralphie Dominicci-Rivera,*
*Erasto Zayas-López,*
*Juan Carlos Adrover,*
*Sammy Rodríguez*

MARINI PIETRANTONI MUÑIZ LLC
By:     Luis C. Marini-Biaggi
250 Ponce de León Avenue, Suite 900
San Juan, Puerto Rico 00918

*Co-Counsel for Hon. Pedro R. Pierluisi-*
*Urrutia, in his Official Capacity as*
*Governor of the Commonwealth of Puerto*
*Rico; Commonwealth of Puerto*
*Rico; Puerto Rico Public Private*
*Partnership Authority; Fermín*
*Fontanés Gómez, in his Official Capacity*
*as Executive Director of Puerto Rico*
*Public Private Partnership*
*Authority; Puerto Rico Fiscal*
*Agency and Financial Advisory*
*Authority; And Omar J. Marrero-Díaz,*
*in his Official Capacity as Executive*
*Director of Puerto Rico Fiscal*
*Agency and Financial Advisory*
*Authority*

DÍAZ & VÁZQUEZ LAW FIRM, P.S.C.
By:     Katiuska Bolaños
290 Jesús T. Piñero Ave.
Oriental Tower, Suite 803
San Juan, PR 00918

*Counsel for Puerto Rico Electric Power*
*Authority; Ralph A. Kreil-Rivera, in his*
*official capacity as the President of the*
*Governing Board of the Puerto Rico Electric*
*Power Authority; and Efran Paredes-*
*Maysonet, in his official capacity as Executive*
*Director of Puerto Rico Electric Power*
*Authority*

O'MELVENY & MYERS LLP
By:     John J. Rapisardo
          Peter Friedman
          Maria J. DiConza
7 Times Square
New York, New York 10036

*and*

Elizabeth L. McKeen
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660

*and*

Madhu Pocha
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067

*Counsel for Hon. Pedro R. Pierluisi-Urrutia,*
*in his official capacity as Governor of the*
*Commonwealth of Puerto Rico;*
*Commonwealth of Puerto Rico; Puerto Rico*
*Electric Power Authority; Ralph A. Kreil-*
*Rivera, in his official capacity as the*
*President of the Governing Board of the*
*Puerto Rico Electric Power Authority; Efran*
*Paredes-Maysonet, in his official*
*capacity as Executive Director of Puerto*
*Rico Electric Power Authority;*
*Puerto Rico Public Private*
*Partnership Authority; Fermín*
*Fontanés Gómez, in his official capacity*
*as Executive Director of Puerto Rico*
*Public Private Partnership*
*Authority; Puerto Rico Fiscal*
*Agency and Financial Advisory*
*Authority; and Omar J. Marrero-Díaz, in his*
*official capacity as Executive*
*Director of Puerto Rico Fiscal*
*Agency and Financial Advisory*
*Authority*

O'NEILL & BORGES LLC
By:     Herman D. Bauer
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813

PROSKAUER ROSE LLP
By:     Martin J. Bienenstock
        Paul V. Possinger
        Ehud Barak
        Margaret A. Dale
        Jonathan E. Richman

Eleven Times Square
New York, NY 10036

*and*

Timothy W. Mungovan
Laura E. Stafford
Elliot R. Stevens
One International Place
Boston, MA 02110

*and*

Jennifer L. Jones
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010

*Attorneys for the Financial
Oversight and Management Board
as representative for the Commonwealth and
PREPA*

DLA PIPER LLP (US)
By:     Brett Ingerman
The Marbury Building, 6225 Smith Ave.
Baltimore, MD 21209-3600

*and*

Tomasita Sherer
1251 Ave. of the Americas, 27th Fl.
New York, NY 10020-1104

*and*

Mariana Muñiz Lara
Calle de la Tanca #500, Suite 401
San Juan, PR 00901-1969

*Counsel for Luma Energy, LLC; Luma
Energy, Servco, LLC; and Wayne
Stensby*

LAURA TAYLOR SWAIN, United States District Judge

Before the Court are *Defendants' Joint Memorandum of Law in Support of Motion to Dismiss Second Amended Complaint Under FRCP 12(b)(1) and 12(b)(6)* (Docket Entry No. 71 in Adv. Proc. No. 21-00041) (the "UTIER Motion"), and the *Defendants' Joint Memorandum of Law in Support of Motion to Dismiss First Amended Complaint Under Rules 12(b)(1) and 12(b)(6)* (Docket Entry No. 13 in Adv. Proc. No. 21-00049) (the "SREAEE Motion"), filed by the Financial Oversight and Management Board of Puerto Rico (the "Oversight Board"), in its own capacity and as the Title III representative of the Puerto Rico Electric Power Authority ("PREPA"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), the Puerto Rico Public-Private Partnership Authority (the "P3"), LUMA Energy, LLC and LUMA Energy ServCo, LLC ("LUMA Energy" or "LUMA"), Hon. Pedro R. Pierluisi-Urrutia , Ralph A. Kreil-Rivera, Efran Paredes-Maysonet, Fermín Fontánes-Gómez, Omar J. Marrero-Díaz and Wayne Stensby (collectively, the "Defendants").  In the UTIER Motion, Defendants seek dismissal of the *Second Amended Adversary Complaint* (Docket Entry No. 64 in Adv. Proc. No. 21-00041) (the "UTIER Complaint") filed by Unión de Trabajadores de La Industria Eléctrica y Riego ("UTIER"), Ángel Figueroa-Jaramillo, Freddyson Martínez-Estevez, Ralphie Dominicci-Rivera, Waldo Rolón, and Ronald Vázquez (collectively, the "UTIER Plaintiffs").  The SREAEE Motion seeks dismissal of the *First Amended Adversary Complaint* (Docket Entry No. 7 in Adv. Proc. No. 21-00049) (the "SREAEE Complaint" and, together with the UTIER Complaint, the "Complaints") filed by the Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica ("SREAEE"), the Board of Trustees of the Puerto Rico Electric Authority Employees' Retirement System; José Ramón Rivera-Rivera;

Ralphie Dominicci-Rivera; Erasto Zayas-López; Juan Carlos Adrover; and Sammy Rodríguez (collectively, the "SREAEE Plaintiffs" and, together with the UTIER Plaintiffs, the "Plaintiffs").

The UTIER Plaintiffs filed a response to the Defendants' UTIER Motion (Docket Entry No. 77 in Adv. Proc. No. 21-00041) (the "UTIER Opposition"), and Defendants filed a reply in support of the UTIER Motion. (Docket Entry No. 81 in Adv. Proc. No. 21-00041 (the "UTIER Reply"). The SREAEE Plaintiffs filed a response to the SREAEE Motion (Docket Entry No. 17 in Adv. Proc. No. 21-00049) (the "SREAEE Opposition"), and Defendants filed a reply in support of the SREAEE Motion. (Docket Entry No. 23 in Adv. Proc. No. 21-00049) (the "SREAEE Reply").

The Court has carefully considered the arguments and submissions made in connection with the UTIER Motion and the SREAEE Motion (collectively, the "Motions"). The Court has statutory subject matter jurisdiction of this matter pursuant to section 306(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2166(a).[2]

In the Complaints, Plaintiffs assert that the Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement (Docket Entry No. 1-1 in Adv. Proc. No. 21-00041) (the "O&M Agreement") among PREPA, LUMA Energy and the P3 (i) is null and void under several Puerto Rico statutes and federal law, including PROMESA and the Employee Retirement Income Security Act ("ERISA") (the "First Claim for Relief"), (ii) is null and void because it is a leonine contract (the "Second Claim for Relief"), (iii) is a contract in prejudice of a third party (the "Third Claim for Relief"), (iv) tortiously interferes with Plaintiffs'

---

[2]     PROMESA is codified at 48 U.S.C. § 2101 et seq. References to "PROMESA" section numbers in the remainder of this Opinion and Order are to the uncodified version of the legislation.

collective bargaining rights (the "Fourth Claim for Relief"), and (v) violates the contracts clause

of the Constitution of the United States (U.S. Const. art. I, § 10, cl. 1 (the "Contracts Clause"))

(the "Fifth Claim for Relief"); (vi) is null and void insofar as it provides for administrative

expense payment of certain obligations to LUMA[3] (the "Sixth Claim for Relief"); and that (vii)

PREPA must pay its debt obligations to SREAEE (the "Seventh Claim for Relief"); (viii) the

Public-Private Partnership Act, Act No. 29-2009, 27 L.P.R.A. § 2601 et seq. ("Act 29") violates

the Contracts Clause and the supremacy clause of the Constitution of the United States (U.S.

Const. art. IV, cl. 2 (the "Supremacy Clause") (the "Eighth Claim for Relief"); (ix) Act 29

violates the separation of powers doctrine under the Constitution of Puerto Rico (the "Ninth

Claim for Relief"); (x) the Court should enter an order that enjoins the O&M Agreement (the

"Tenth Claim for Relief"), and (xi) the Court should award damages to the UTIER Plaintiffs in

the amount of $15,000,000 (the "Eleventh Claim for Relief"[4].

      For the following reasons, Defendants' Motions are granted as set forth herein.

All of Plaintiffs' claims against the Hon. Pedro Pierluisi-Urrutia, Ralph A. Kreil-Rivera, Efran

Paredes-Maisonet, Fermin Fontanes-Gomez, Omar J. Marrero-Diaz (collectively, the

"Government Party Defendants"),[5] and Wayne Stensby,[6] are dismissed pursuant to Federal Rule

---

[3]   See In re Fin. Oversight & Mgmt. Bd. for P.R. 621 B.R. 289 (D.P.R. 2020), aff'd, 7 F.4th
31 (1st Cir. 2021).

[4]   The SREAEE Complaint, which does not separately designate its damages demand as a
numbered claim for relief, seeks $2,951,733,780 in damages. (SREAEE Compl ¶ 334.)
SREAEE alleges the amount sought "corresponds to the actuarial debt of SREAEE as of
2019." (SREAEE Compl ¶ 334.)

[5]   The SREAEE Complaint does not name Efran Paredes-Maisonet as a Defendant. (See
SREAEE Compl.)

[6]   Wayne Stensby is named in his official capacity as LUMA President and CEO. (UTIER
Compl. ¶ 22; SREAEE Compl ¶ 41.)

of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  The First, Second, Sixth,

Seventh, Eighth, Ninth, Tenth, and Eleventh Claims for Relief[7] asserted in each Complaint are

dismissed as against the remaining defendants pursuant to Rule 12(b)(1) for lack of subject

matter jurisdiction, and the Third, Fourth, and Fifth Claims for Relief in each Complaint are

dismissed as against the remaining defendants pursuant Rule12(b)(6) for failure to state a claim

upon which relief can be granted.[8]

## I.

### BACKGROUND

The following recitation of facts is drawn from the Complaints, documents

integral thereto, and relevant legislation, except where otherwise noted.[9]

In 2018, the Puerto Rico Legislature passed the Puerto Rico Electric Power

System Transformation Act, Act No. 120-2018 ("Act 120"), codified at 22 L.P.R.A. § 1111 et

seq., which authorized and established the legal framework for the sale, disposition, and/or

transfer of the assets, operations, and services of PREPA through a public-private partnership, in

---

[7]     The Eleventh Claim for Relief only appears in the UTIER Complaint.  (UTIER Compl. ¶
        339.)

[8]     Federal Rule of Civil Procedure 12 is made applicable in this Adversary Proceeding by
        Federal Rule of Bankruptcy Procedure 7012(b).  See 48 U.S.C. § 2170 ("The Federal
        Rules of Bankruptcy Procedure shall apply to a case under this subchapter and to all civil
        proceedings arising in or related to cases under this subchapter.").

[9]     In evaluating the motions to dismiss the Complaints pursuant to Rule 12(b)(6), the Court
        views the relevant well-pleaded factual allegations of the Complaints in the light most
        favorable to the Plaintiffs.  The court "may consider 'documents the authenticity of which
        are not disputed by the parties,' 'documents central to plaintiffs' claim,' and 'documents
        sufficiently referred to in the complaint.'"  Claudio-De Leon v. Sistema Universitario
        Ana G. Mendez, 775 F.3d 41, 46 (1st Cir. 2014) (quoting Alternative Energy, Inc. v. St.
        Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)).

accordance with Act 29.  (See UTIER Compl. ¶ 24; SREAEE Compl. ¶ 43.)

On June 22, 2020, the P3, the Puerto Rico Energy Bureau ("PREB"), the PREPA

Governing Board, and the Governor of Puerto Rico approved the O&M Agreement among

PREPA, LUMA Energy, and the P3. (See O&M Agreement art. 2.)  The O&M Agreement

provides for LUMA Energy's assumption of the operation and management of PREPA's

Transmission and Distribution System (the "T&D System"), while PREPA retains ownership of

the T&D System assets.  (See id. art. 3.)  Under Act 120, current employees of PREPA's T&D

System have the option to (i) apply for employment with LUMA Energy, (ii) remain at PREPA

if a position is available, or (iii) transfer to another government agency.  See 22 L.P.R.A. § 1121.

Act 120, as amended by Act 17, further provides as follows:

> The Employees who, as a result of this Act, are transferred under the
> concept of mobility to another government entity or who become
> employees of a PREPA Transaction Contractor shall keep all of their
> vested rights in accordance with the laws, rules, collective
> bargaining agreements, and regulations applicable to them, as well
> as the privileges, obligations, and status with respect to any existing
> pension or retirement plan, or savings and loan fund established by
> law in which such employees were enrolled before the approval of
> this Act and that are compatible with the provisions of Act No. 26-
> 2017.

Id.  The O&M Agreement requires LUMA Energy to comply with Act 120 and all other

"applicable law."  (See O&M Agreement §§ 9.1, 9.9.)

UTIER is a labor union that represents PREPA employees.  (UTIER Compl. ¶ 1.)

UTIER is a party to a collective bargaining agreement with PREPA (Docket Entry No. 1-2 in

Adv. Proc. No. 21-00041) (the "CBA"), which provides for certain employment terms,

conditions, and benefits for UTIER's members who are employed by PREPA.  (See CBA.)

SREAEE is a public pension system and, as SREAEE asserts, "is an intended third-party

beneficiary of the CBA.  (SREAEE Compl. ¶¶ 1, 5-7.)

LUMA Energy will not assume PREPA's contractual obligations to UTIER

members under the CBA.   (See O&M Agreement § 1.1 (excluding "collective bargaining

agreement with union labor" from definition of "System Contracts" entered into by PREPA and

which will remain in effect after Service Commencement Date).)  UTIER members who are

hired by LUMA Energy will not be represented by UTIER in connection with their LUMA

employment, and the O&M Agreement makes no other provision for union representation of the

LUMA employees.  (UTIER Compl. ¶ 58.)

The O&M Agreement provides for the implementation of a 401(k) retirement

plan for all LUMA employees, which SREAEE alleges "competes with [] and decapitalizes

[SREAEE]." (SREAEE Compl. ¶ 56.)  PREPA employees who have completed at least ten

years of employment with PREPA, and who have been hired by LUMA Energy, have three

options with respect to the handling of their retirement account: (1) discontinue future

contributions to SREAEE but continue participating in SREAEE based on past contributions, (2)

discontinue all participation in SREAEE and transfer all prior contributions to LUMA Energy's

employer-sponsored 401(k) retirement account, or (3) continue participating in SREAEE while

employed by LUMA Energy.  PREPA employees who are hired by LUMA Energy, but have

fewer than ten years of service with PREPA, must withdraw from SREAEE.  (See UTIER

Compl. ¶ 112; SREAEE Compl. ¶ 90.)

Act 29 further specifies that any PREPA employee "who has ten (10) years or

more of employment accumulated and is [hired by a public-private partnership created pursuant

to Act 29, such as LUMA], shall maintain the vested rights under said system and may continue

to make his/her individual contribution to the retirement System, and his/her new employer shall

make its employer contribution" upon transfer to LUMA Energy.  27 L.P.R.A. § 2609(g).  The

O&M Agreement provides that LUMA Energy will not assume PREPA's obligations to SREAEE, but "shall, pursuant to Act 29, make any employer contributions it is permitted to make under Applicable Law to [SREAEE] with respect to any Hired Former Employee of [PREPA] that elects to continue participating in [SREAEE.]"  (O&M Agreement at § 5.8(a).)

    A.    <u>Procedural History</u>

    1.    <u>The UTIER Adversary Proceeding</u>

The UTIER Plaintiffs commenced this lawsuit against Defendants on April 20, 2021.  (<u>See</u> Docket Entry No. 1 in Adv. Proc. No. 21-00041.)  On April 26, 2021, the UTIER Plaintiffs filed an Amended Complaint (<u>See</u> Docket Entry No. 7 in Adv. Proc. No. 21-00041) and their *Motion for Preliminary Injunction to Enjoin the Execution of the O&M Agreement*. (<u>See</u> Docket Entry No. 8 in Adv. Proc. No. 21-00041 (the "PI Motion").)  On May 21, 2021, the Court entered an order denying the PI Motion.  (<u>See</u> Docket Entry No. 56 in Adv. Proc. No. 21-00041, the "PI Opinion and Order".)  On May 28, 2021, the UTIER Plaintiffs filed a *Motion for Reconsideration*.  (<u>See</u> Docket Entry No. 57 in Adv. Proc. No. 21-00041.)  On June 1, 2021, the Court entered a *Memorandum Opinion and Order Denying Motion for Reconsideration*.  (<u>See</u> Docket Entry No. 61 in Adv. Proc. No. 21-00041.)  On June 4, 2021, the UTIER Plaintiffs filed the operative Second Amended Complaint.  The UTIER Plaintiffs seek an order (i) nullifying the O&M Agreement, (ii) enjoining LUMA Energy from continuing the operation of the T&D System as required by the O&M Agreement, (iii) directing PREPA to pay SREAEE $603 million for certain accrued pension liabilities, and (iv) awarding the UTIER Plaintiffs monetary damages.  (UTIER Compl. ¶¶ 279 – 339.)

On October 12, 2021, Cortland Capital Market Services LLC ("Cortland"), filed the *Protective Motion of Cortland Capital Market Services LLC, as Administrative Agent, to be*

*Heard as Amicus Curiae in connection with the Motion to Dismiss Second Amended Complaint.*

(Docket Entry Nos. 84 and 85 in Adv. Proc. No. 21-00041 (the "Protective Motion").)

Responses were filed by Assured Guaranty Corp., Assured Guaranty Municipal Corp. (f/k/a

Financial Security Assurance Inc.), National Public Finance Guarantee Corporation, the Ad Hoc

Group of PREPA Bondholders, and U.S. Bank National Association, in its capacity as PREPA

Bond Trustee (Docket Entry No. 88 in Adv. Proc. No. 21-00041) and by Defendants (Docket

Entry No. 89 in Adv. Proc. No. 21-00041).  On December 30, 2021, the Court denied the

Protective Motion.  (Docket Entry No. 96 in Adv. Proc. No. 21-00041 (the "Order Denying

Protective Motion).) [10]

On July 19, 2021, Defendants filed a motion to dismiss the UTIER Complaint.

(See Docket Entry No. 71 in Adv. Proc. No. 21-00041.)  Defendants seek dismissal of the First,

Second and Sixth Claims for Relief, arguing that the UTIER Plaintiffs lack standing to assert

their claims.  (Def. UTIER Mot. ¶¶ 21-24.)  The three claims challenged under Fed. R. Civ. P.

12(b)(1) are as follows:

> **First Claim for Relief** - The O&M Agreement is null and void for
> Violating Puerto Rico and Federal Law.  (UTIER Compl. ¶¶ 279-
> 284.)

> **Second Claim for Relief** - The O&M Agreement is null and void
> because it constitutes a leonine obligation.  (UTIER Compl. ¶¶
> 285-289.)

---

[10]   On January 13, 2022, Cortland filed an objection to the *Order Denying the Protective
Motion* of Cortland Capital Market Services LLC, as Administrative Agent, to be heard
as *amicus curiae* in connection with UTIER Motion.  (Docket Entry No. 98 in Adv. Proc.
No. 21-00041) (the "Cortland Objection").)  Because the Cortland Objection seeks
reconsideration of the *Order Denying Protective Motion* and allowance of Cortland's
filing of an amicus brief in response to the UTIER Motion, the Cortland Objection is
denied as moot.  Cortland's Protective Motion sought further briefing on the issue of
third-party beneficiary entitlements.  (Cortland Obj. ¶ 2.)  The instant Opinion and Order
resolves all claims pertaining to the UTIER Complaint, thus obviating any need for
further briefing on the dismissed claims.

**Sixth Claim for Relief** - The O&M Agreement's priority is null and void.  (UTIER Compl. ¶¶ 311-314.)

Defendants also seek dismissal of the Third, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Claims for Relief, arguing that the UTIER Plaintiffs fail to state a claim upon which relief can be granted.  (Def. UTIER Mot. ¶¶ 41-42, 55-60, 65, 69.)  The claims challenged under Rule 12(b)(6) are as follows:

**Third Claim for Relief** - Contract in prejudice to third party. (UTIER Compl. ¶¶ 290-294.)

**Fourth Claim for Relief** - Tortious interference.  (UTIER Compl. ¶¶ 295-300.)

**Fifth Claim for Relief** - Contracts Clause violation.  (UTIER Compl. ¶¶ 301-310.)

**Seventh Claim for Relief** - PREPA must pay the nearly $603 million it owes to SREAEE. (UTIER Compl. ¶¶ 315-323.)

**Eighth Claim for Relief** -  Act 29-2009 is unconstitutional under the Supremacy and Contract Clause of the U.S. Constitution. (UTIER Compl. ¶¶ 324-328.)

**Ninth Claim for Relief** - Act 29-2009 is unconstitutional because it violates the Separation of Powers Doctrine under the Constitution of Puerto Rico.  (UTIER Compl. ¶¶ 329-334.)

**Tenth Claim for Relief** - Preliminary injunction enjoining the enforcement of the O&M Agreement.  (UTIER Compl. ¶¶ 335-338.)

**Eleventh Claim for Relief** - Damages. (UTIER Compl. ¶ 339.)

2.    The SREAEE Adversary Proceeding

On May 6, 2021, the SREAEE Plaintiffs commenced an adversary proceeding against the Defendants.  (Docket Entry No. 1 in Adv. Proc. No. 21-00049.)  On June 4, 2021, the SREAEE Plaintiffs filed an Amended Complaint.  (Docket Entry No. 7 in Adv. Proc. No. 21-

00049.)  The SREAEE Plaintiffs seek an order (i) nullifying the O&M Agreement, (ii) enjoining

LUMA Energy from continuing the operation of the T&D System as required by the O&M

Agreement, (iii) directing PREPA to pay SREAEE $603 million for certain accrued pension

liabilities, and (iv) awarding the SREAEE Plaintiffs monetary damages.  (SREAEE Compl. ¶¶

276-333.)  The three claims challenged under Rule 12(b)(1) are as follows:

On July 19, 2021, Defendants filed a motion to dismiss the SREAEE Complaint.

(See Docket Entry No. 13 in Adv. Proc. No. 21-00049.)  Defendants seek dismissal of the First,

Second and Sixth Claims for Relief, arguing that the SREAEE Plaintiffs lack standing to assert

their claims.[11] (SREAEE Mot. ¶¶ 20-23.)

> **First Claim for Relief** - The O&M Agreement is null and void
> for Violating Puerto Rico and Federal Law. (SREAEE Compl. ¶¶
> 276-280.)
>
> **Second Claim for Relief** - The O&M Agreement is null and void
> because it constitutes a leonine obligation. (SREAEE Compl. ¶¶
> 281-285.)
>
> **Sixth Claim for Relief** - The O&M Agreement's priority is null
> and void. (SREAEE Compl. ¶¶ 306-309.)

Defendants also seek dismissal of the Third, Fourth, Fifth, Seventh, Eighth, Ninth,

Tenth, and Eleventh Claims for Relief on the basis that the UTIER Plaintiffs fail to state a claim

upon which relief can be granted.  (SREAEE Mot. ¶¶ 41-41, 54-56, 68.)  The three claims

challenged under Rule 12(b)(6) are as follows:

> **Third Claim for Relief** - Contract in prejudice to third party.
> (SREAEE Compl. ¶¶ 286-290.)
>
> **Fourth Claim for Relief** - Tortious interference. (SREAEE
> Compl. ¶¶ 291-296.)

---

[11]    Defendants also argue that the First, Second and Sixth Claims for Relief should be
dismissed because the SREAEE Plaintiffs fail to state a claim upon which relief can be
granted.

**Fifth Claim for Relief** - Contracts Clause violation.  (SREAEE Compl. ¶¶ 297-305.)

**Seventh Claim for Relief** - PREPA must pay the nearly $603 million it owes to SREAEE.  (SREAEE Compl. ¶¶ 310-317.)

**Eighth Claim for Relief** - Act 29-2009 is unconstitutional under the Supremacy and Contract Clause of the U.S. Constitution.

**Ninth Claim for Relief** - Act 29-2009 is unconstitutional because it violates the Separation of Powers Doctrine under the Constitution of Puerto Rico.

**Tenth Claim for Relief** - Preliminary injunction enjoining the enforcement of the O&M Agreement.

II.

DISCUSSION

A court presented with motions to dismiss under both Rules 12(b)(1) and 12(b)(6) should ordinarily decide jurisdictional questions before addressing the merits.  Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149 (1st Cir. 2002).  The party invoking the jurisdiction of a federal court carries the burden of proving that there is a proper basis for the exercise of jurisdiction.  Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007).  The Court also has an independent duty to assess whether it has subject matter jurisdiction of an action.  See Fed. R. Civ. P. 12(h)(3); FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990).

A.    Subject Matter Jurisdiction

Article III, section 2 of the Constitution of the United States limits the exercise of federal judicial power to actual cases and controversies.  U.S. Const. art. III, § 2; Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 239-41 (1937) ("Aetna").  The authority conferred on federal courts by the Declaratory Judgment Act, 28 U.S.C. § 2201, is likewise

limited to controversies that are within the constitutionally constrained scope of federal

jurisdiction.  Aetna, 300 U.S. at 240.  To be justiciable, a controversy must be "a real and

substantial controversy admitting of specific relief through a decree of a conclusive character, as

distinguished from an opinion what the law would be upon a hypothetical state of facts."  Aetna,

300 U.S. at 241.  Federal courts are not empowered to issue advisory opinions where there is no

actual controversy of this nature.  See id.; Golden v. Zwickler, 394 U.S. 103, 108 (1969); Shell

Oil Co. v. Noel, 608 F.2d 208, 213 (1st Cir. 1979).

        In resolving a Rule 12(b)(1) motion to dismiss an action for lack of standing, the

Court must "credit the plaintiff's well-pled factual allegations and draw all reasonable inferences

in the plaintiff's favor."  Sanchez ex rel. D.R.-S. v. United States, 671 F.3d 86, 92 (1st Cir.

2012); see Lyman v. Baker, 954 F.3d 351, 359-60 (1st Cir. 2020) (stating that the same "burden

of proof at the pleading stage[] and posture towards the facts alleged in the complaint" applies to

motions under Rule 12(b)(1) as motions under Rule 12(b)(6)).  To demonstrate constitutional

standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

decision.  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).  Plaintiffs, as "[t]he part[ies]

invoking federal jurisdiction[,] bear[] the burden of establishing these elements."  Lujan v. Defs.

of Wildlife, 504 U.S. 555, 561 (1992).

        "In addition to these Article III prerequisites, prudential concerns ordinarily

require a plaintiff to show that his claim is premised on his own legal rights (as opposed to those

of a third party), that his claim is not merely a generalized grievance, and that it falls within the

zone of interests protected by the law invoked."  Pagan v. Calderon, 448 F.3d 16, 27 (1st Cir.

2006).  A plaintiff's invocation of public policy interests, absent more, is not sufficiently

particularized, but instead constitutes a "generalized grievance."  A "generalized grievance" that alleges an injury "which is 'shared in substantially equal measure by all or a large class of citizens,' does not justify the exercise of the court's jurisdiction."  Nogueras Cartagena v. Maria Calderon, 150 F. Supp. 2d. 338, 343 (D.P.R. 2001) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)).  Injuries that are too "widely shared" or are "comparable to the common concern for obedience to law" may fall into the category of generalized grievances about the conduct of government that are insufficient to support standing.  Becker v. Fed. Election Comm'n., 230 F.3d 381, 390 (1st Cir. 2000) (internal quotation omitted).  Such prudential considerations are "not as inexorable as their Article III counterparts," Pagan, 448 F.3d at 27, but they can, as here, help in discerning whether an alleged injury properly falls within the scope of this Court's Article III jurisdiction.

"[A]n association has standing to bring suit on behalf of its members."  Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).  To demonstrate such standing, an organizational plaintiff must generally meet the same requirements as an individual plaintiff. See Council of Ins. Agents & Brokers v. Juarbe-Jimenez, 443 F.3d 103, 108 (1st Cir. 2006) (citing Lujan, 504 U.S. at 560).

1.   The UTIER Plaintiffs and the SREAEE Plaintiffs Lack Standing to Assert Claims Based on the Validity of the O&M Agreement

UTIER is a "labor union[] that represent[s] PREPA's employees and retirees." (UTIER Compl. ¶ 1.)  UTIER is a party to the CBA negotiated with PREPA.  (UTIER Compl. ¶ 3.)  LUMA Energy will not assume the CBA under the terms of the O&M Agreement.  (UTIER Compl. ¶ 40.)  SREAEE is a "public pension system and trust" created for the benefit of PREPA employees as a function of UTIER's CBA with PREPA that subsequently became an independent entity.  (SREAEE Compl. ¶¶ 1, 4.)  SREAEE asserts that it is "an intended third-

party beneficiary of the current CBA between UTIER and PREPA." (SREAEE Compl ¶ 7.) SREAEE alleges that the O&M Agreement introduced a new retirement savings scheme, which would reduce employer contributions to SREAEE and accelerate the organization's insolvency, thereby hindering the system's ability to fulfill the pension obligations due to retirees. (SREAEE Compl ¶ 56.)

Defendants argue that the UTIER Plaintiffs lack standing to assert the First Claim for Relief (the O&M Agreement is null and void and violative of federal and Puerto Rico law), the Second Claim for Relief (the O&M Agreement is null and void because it constitutes a leonine obligation), and the Sixth Claim for Relief (the O&M Agreement's priority is null and void), because the Plaintiffs have not alleged a "concrete or individual injury" arising from the O&M Agreement. (UTIER Mot. ¶ 23 (citing Nogueras Cartagena v. Maria Calderon, 150 F. Supp. 2d. 338, 343 (D.P.R. 2001).) (SREAEE Mot. ¶ 22.)

In the PI Opinion and Order, the Court has held that UTIER failed to allege an Article III injury with respect to certain of its claims[12] concerning the O&M Agreement. (PI Op. and Ord. at 14.) Many of the claims analyzed in the PI Opinion and Order are restated in the UTIER Complaint and SREAEE Complaint, including claims based on the same Puerto Rico statutes. (Compare First Amended Adversary Complaint, ¶ 273 (Docket Entry No. 7 in Adv. Proc. No. 21-00041), with UTIER Compl. ¶ 281 (Docket Entry No. 64) and SREAEE Compl. ¶ 278.)

---

[12]     The claims previously considered in connection with the PI and Opinion and Order were those based on: the Puerto Rico Energy Transformation and RELIEF Act, Act 57-2014, 22 L.P.R.A. § 1051 et seq., ("Act 57"); the Puerto Rico Energy Public Policy Act, Act 17-2019, 22 L.P.R.A. § 1141 ("Act 17"); the Public-Private Partnership Act, Act No. 29-2009, 27 L.P.R.A. § 2601 et seq. ("Act 29"); PREB Regulation No. 8542; and the contention that the O&M Agreement is a leonine contract.

Here, the Plaintiffs cite Act No. 57,[13] PREB's Regulation No. 8432,[14] Act 17, [15] Act No. 29,[16] and Act 83-1941,[17] as statutes that support nullification of the O&M Agreement. In doing so, Plaintiffs invoke "broad legal and public policy principles [to] argue that [the O&M Agreement] should not have been approved and should not be implemented." These principles are insufficient to demonstrate the requisite injury that is concrete or particularized to UTIER or SREAEE and flowing from any of these statutes so as to warrant nullification of the O&M Agreement.  Lujan, 504 U.S. at 575-76 (explaining that "an injury amounting only to the alleged violation of a right to have the Government act in accordance with law was not judicially cognizable because assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning"(internal quotation and citation omitted)).

---

[13]     Act 57 created PREB and provides that PREB is an "independent regulatory entity in charge of regulating, overseeing, and ensuring compliance with the public policy on energy of the Commonwealth of Puerto Rico." 22 L.P.R.A. §1054(a).

[14]     While the First Claim for Relief notes PREB Regulation No. 8432, the Complaint contains excerpts related to PREB Regulation No. 8432, titled Regulation on the Standards of Ethical Conduct for Employees of the Puerto Rico Energy Commission and the Principles that should Govern the Commissioners Actions as Representatives of the Commission.  (UTIER Compl. ¶¶ 137, 281.)  (SREAEE Compl. ¶¶ 115, 278.)  PREB Regulation No. 8432 requires Commissioners to act impartially and refrain from situations that pose a real or apparent conflict of interest. (UTIER Compl. ¶ 137.) (SREAEE Compl. ¶ 115.)

[15]     Act 17 sets out Puerto Rico's energy public policy and includes principles to ensure civic participation in certain energy public policy issues.  Plaintiffs contend that the O&M Agreement violates Act 17 by privatizing certain issues which Act 17 requires be kept public. (UTIER Compl. ¶¶ 155, 179.)  (SREAEE Compl. ¶¶ 133, 146.)

[16]     Act 29 authorized and established the legal framework for the sale, disposition, and/or transfer of the assets, operations, and services of PREPA through a public-private partnership, in accordance with the Public-Private Partnership Act.  22 L.P.R.A. § 1111.

[17]     Act 83-1941 created PREPA's Energy Control Center and authorized the appointment of a Director to oversee its functions.  See 22 LPRA §195a.

The Court finds that, like allegations proffered in connection with Plaintiffs'
preliminary injunction motion, "[e]ach of these allegations concerns disagreement with the
Legislature's decisions with respect to Puerto Rico's energy policy, or harms that are widely
shared by the people of Puerto Rico generally rather than to any of the Plaintiffs specifically."
(PI Op. & Ord. at 15.)  Such policy disagreements and broad allegations of societal harm are
insufficient to support Article III standing.

Accordingly, the Second Claim for Relief (the O&M Agreement is null and void
because it constitutes a leonine obligation) and the Sixth Claim for Relief (the O&M
Agreement's priority is null and void), are dismissed pursuant to Rule 12(b)(1).   The portion of
the First Claim for Relief (the O&M Agreement is null and void and violative of federal and
Puerto Rico law) that seeks nullification of the O&M Agreement based on Act No. 57, PREB's
Regulation No. 8432, Act 17, Act No. 29, and Act 83-1941, is also dismissed pursuant to Rule
12(b)(1).  The Court now turns to whether Plaintiffs have standing to assert the remaining
portion of the First Claim for Relief that rests on an alleged violation of vested rights that are
required to be protected by Act 120, including claims based on purported violations of ERISA
and section 201 of PROMESA.

    2.    <u>Plaintiffs' Standing to Assert the Remaining Portion of the
First Claim of Relief</u>

    a.  <u>Organizational Standing</u>

In the PI Opinion and Order, the Court held that "the imminent loss of […]
membership" was a concrete and particularized injury to UTIER for purposes of establishing
Article III standing with respect to this element of its claims.  PI Op. and Ord. at 14.  "[If] the
plaintiff is himself an object of the [government's] action (or forgone action) at issue, there is
ordinarily little question that the action or inaction has caused him injury, and that a judgment

preventing or requiring the action will redress it." Lujan, 504 U.S. at 561-62 (1992). UTIER is

asserting a claim on the basis of an alleged injury to the organization's membership based on an

existing CBA between UTIER and PREPA. (UTIER Compl. ¶¶ 1, 42-58.) Similarly, SREAEE

asserts that the elimination of the CBA and introduction of a new retirement plan alternative

"competes with [] and decapitalizes [SREAEE]." (SREAEE Compl. ¶ 56.) Such an injury is

concrete and particularized to SREAEE.

Thus, UTIER and SREAEE have alleged facts sufficient to support organizational

standing to assert the portion of the First Claim for Relief that seeks relief for a violation of

vested rights that are required to be protected by Act 120, including violations of ERISA and of

section 201 of PROMESA.

### b. Individual Plaintiffs' Standing

The Complaints are devoid of facts sufficient to show a concrete and

particularized injury to the remaining individual plaintiffs named in the UTIER Complaint[18] and

the SREAEE Complaint that is fairly traceable to the conduct that is the subject of those

Complaints.[19] See Spokeo, 136 S. Ct. at 1547. There are no allegations that differ from those

articulated by UTIER and SREAEE, nor any allegations that would entitle the Individual

Plaintiffs to assert additional claims on their own behalf. Thus, the individual plaintiffs lack

standing to assert claims on their own behalf, or on behalf of UTIER and SRAEE to recover for

---

[18]    The individual plaintiffs named in the UTIER Complaint are Ángel Figueroa-Jaramillo,
Freddyson Martínez-Estevez, Ralphie Dominicci-Rivera, Waldo Rolón, and Ronald
Vázquez.

[19]    The individual plaintiffs named in the SREAEE Complaint are Board of Trustees of the
Puerto Rico Electric Authority Employees' Retirement System; José Ramón Rivera-
Rivera; Ralphie Dominicci-Rivera; Erasto Zayas-López; Juan Carlos Adrover; and
Sammy Rodríguez.

alleged injury to either organization, and their claims will be dismissed for lack of subject matter jurisdiction.

c.  Standing to Enforce ERISA Provision

Only the Secretary of Labor, plan participants, plan beneficiaries, and fiduciaries of ERISA-governed plans may bring suit to enforce the provisions of that statute.  29 U.S.C.A. § 1132(a) (Westlaw through P.L. 118-13).  See also City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc., 156 F.3d 223, 226 (1st Cir. 1998) ("ERISA specifically enumerates the parties with standing to sue to enforce ERISA's provisions: participants, beneficiaries, fiduciaries and the Secretary of Labor.").  Plaintiffs allege that the O&M Agreement and Act 29 violate ERISA by creating a "hybrid system" that is "not uniform" because it allows employees to either stay in SREAEE or transfer to LUMA Energy's 401(k) Retirement Plan.  (UTIER Compl. ¶ 201; SREAEE Compl. ¶ 171.)  The UTIER Plaintiffs and the SREAEE Plaintiffs contend that this hybrid system harms SREAEE because there is no requirement for LUMA to assume PREPA's obligations to SREAEE, and because it further encourages employees to "withdraw" or "transfer assets" from SREAEE to LUMA.  (UTIER Compl. ¶ 114; SREAEE Compl. ¶¶ 94-95.)  Plaintiffs also assert that ERISA, as a federal law purportedly precluding such a "hybrid" arrangement, renders Act 29 unconstitutional pursuant to the Supremacy Clause. The UTIER Plaintiffs and the SREAEE Plaintiffs cite no specific ERISA provisions in advancing these claims.

Neither the UTIER Plaintiffs nor the SREAEE Plaintiffs have pleaded facts demonstrating that UTIER, SREAEE, or the individual plaintiffs are participants, beneficiaries, or fiduciaries of an ERISA-governed plan.  The UTIER Plaintiffs' relationship is with SREAEE (see UTIER Compl. at 5; ¶ SREAEE Compl. ¶ 1).  SREAEE is a "governmental plan" and, as such, is "exempt" from ERISA coverage (see UTIER Compl. ¶ 192; SREAEE Compl. ¶ 278);

see also 29 U.S.C.A. § 1103(b)(1) (providing that ERISA provisions "shall not apply to any

employee benefit plan if . . . such plan is a government plan . . ..")  Accordingly, the UTIER

Plaintiffs and the SREAEE Plaintiffs are not statutorily authorized to sue for purported violations

of ERISA, and their claims asserted pursuant to that statute must be dismissed.  Next, the Court

will consider whether the Plaintiffs have established standing to assert claims against the

Government Party Defendants and Wayne Stensby.

### 3.   Plaintiffs' Claims Regarding the Individually Named Defendants

The Plaintiffs assert unspecified claims against the Government Party Defendants

and Wayne Stensby.  (UTIER Compl. ¶¶ 10, 15, 16, 18, 20, 22; SREAEE Compl. ¶¶ 30, 35, 37,

39, 41.)  Defendants argue that the Plaintiffs have not adequately alleged facts demonstrating that

they have constitutional standing with respect to any claims against the Government Party

Defendants and Wayne Stensby because the Complaints are devoid of factual allegations

supporting any claim against these individuals.  (UTIER Mot ¶ 72 (citing UTIER Compl. ¶¶ 10,

15, 16, 18, 20, 22).)  (SREAEE Mot ¶¶ 69 (citing SREAEE Compl. ¶¶ 30, 35, 37, 39, 41).)

Rather, the UTIER Complaint and the SREAEE Complaint merely identify each Government

Party Defendant and Wayne Stensby by their position and official duty title.

Defendants contend that any official capacity claims asserted against the

Government Party Defendants are duplicative of claims asserted against the Commonwealth of

Puerto Rico and its agencies.  (UTIER Mot ¶ 72.)  (SREAEE Mot. ¶ 71.)  "Suits brought against

a state official in his official capacity generally represent only another way of pleading an action

against an entity of which an officer is an agent."  Guillemard-Ginorio v. Contreras-Gomez, 585

F.3d 508, 531 (1st Cir. 2009); see also Kentucky v. Graham, 473 U.S. 159, 166 (1985) (affirming

dismissal of claim against official capacity defendant as redundant of suit against government

agency).   Plaintiffs argue that the Government Party Defendants are appropriate parties because

they are "responsible for implementing" the O&M Agreement.  (UTIER Opp. ¶ 96; SREAEE
Opp. ¶ 83.)

The Complaints neither plead an injury that is fairly traceable to the challenged
conduct of the Government Party Defendants or of Wayne Stensby, nor one that can be redressed
by a decision granting the relief sought in the Complaints as against the Government Party
Defendants and Wayne Stensby.  Thus, the UTIER Plaintiffs and the SREAEE Plaintiffs have
failed to allege facts sufficient to demonstrate that they have standing to assert any claims against
the Government Party Defendants or Wayne Stensby.  Accordingly, all claims asserted against
the Government Party Defendants and Wayne Stensby are dismissed pursuant to Rule 12(b)(1).
The Court will next address whether the remaining aspects of Plaintiffs' First Claim for Relief
(O&M Agreement is null and void and violative of federal and Puerto Rico law), Third Claim for
Relief (contract in prejudice of a third-party), Fourth Claim for Relief (tortious interference),
Fifth Claim for Relief (Contracts Clause violation), and Eighth Claim for Relief (Act 29-2009 is
unconstitutional) state claims upon which relief can be granted.

B.    Failure to State a Claim Upon Which Relief Can Be Granted

Defendants seeks dismissal of the First Claim for Relief (O&M Agreement is null
and void for violating federal and Puerto Rico law), Third Claim for Relief (contract in prejudice
of a third-party), Fourth Claim for Relief (tortious interference), Fifth Claim for Relief
(Contracts Clause violation), and Eighth Claim for Relief (Act 29-2009 is unconstitutional).
pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief
can be granted.

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim
upon which relief can be granted, a complaint must plead "enough facts to state a claim to relief

that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The

court accepts as true the non-conclusory factual allegations in the complaint and draws all

reasonable inferences in the plaintiff's favor.  Mississippi Pub. Emps.' Ret. Sys. v. Boston

Scientific Corp., 523 F.3d 75, 85 (1st Cir. 2008).  The court "may consider 'documents the

authenticity of which are not disputed by the parties,' 'documents central to plaintiffs' claim,'

and 'documents sufficiently referred to in the complaint.'"  Claudio-De Leon v. Sistema

Universitario Ana G. Mendez, 775 F.3d 41, 46 (1st Cir. 2014) (quoting Alternative Energy, Inc.

v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)).  The complaint must allege

enough factual content to nudge a claim "across the line from conceivable to plausible."

Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009) (citing Twombly, 550 U.S. at 570).

      1.      ERISA (First and Eighth Claims for Relief)

As noted above, ERISA provides that only the Secretary of Labor, and the

participants, beneficiaries, and fiduciaries of ERISA-governed plans, may bring suit to enforce

its provisions.  29 U.S.C.A. § 1132(a) (Westlaw through P.L. 118-13).  It is undisputed that

SREAEE is a "governmental plan" and, as such, is "exempt" from ERISA coverage.  (See

UTIER Compl. ¶ 192; SREAEE Compl. ¶ 278).  The UTIER Plaintiffs and the SREAEE

Plaintiffs separately argue that ERISA preempts the O&M Agreement and Act 29 (and thus,

presumably, precludes enforcement of the contract and the statute).  (See UTIER Compl. ¶ 161;

SREAEE Compl. ¶ 278.)  ERISA's preemption provision provides that ERISA preempts "all

State laws insofar as they may now or hereafter relate to any employee benefit plan described in

section 1003(a) of this title and not exempt under section 1003(b) of this title."  29 U.S.C.A. §

1144(a) (Westlaw through P.L. 118-13).  Section 1003(a) defines the universe of employee

benefit plans to which ERISA applies and section 1003(b) specifically excludes any

"governmental plan" from ERISA's coverage.  29 U.S.C.A. § 1003 (Westlaw through P.L. 118-

13).  The O&M Agreement is a contract, not a state law, and SREAEE is not governed by

ERISA.  Thus, ERISA could not preempt the O&M Agreement or Act 29 insofar as it relates to

SREAEE even if Plaintiffs had standing to assert such a claim.  Accordingly, the Motions are

granted insofar as they seek dismissal of the ERISA preemption aspects of the First and Eighth

Claims pursuant to Rule 12(b)(6) because Plaintiffs seek relief that depends on the erroneous

premise that ERISA governs SREAEE's benefit plans.

> ### 2.    PROMESA Section 201 (First Claim for Relief)

Section 201(b)(1) of PROMESA provides, in pertinent part, as follows:

> A Fiscal Plan developed under this section shall, with respect to the
> territorial government or covered territorial instrumentality, provide
> a method to achieve fiscal responsibility and access to the capital
> markets, and . . . (B) ensure the funding of essential public services;
> (C) provide adequate funding for public pension systems; . . . and
> (N) respect the relative lawful priorities or lawful liens, as may be
> applicable, in the constitution, other laws, or agreements of a
> covered territory or covered territorial instrumentality in effect prior
> to June 30, 2016.

48 U.S.C.A. §§ 2141(b)(1)(B), (C), (N) (Westlaw through P.L. 118-13).  Plaintiffs assert that the

O&M Agreement violates section 201(b)—or precludes the Oversight Board from complying

with section 201(b)—because it allegedly deprives PREPA and the SREAEE of adequate

funding and would improperly prioritize obligations to LUMA Energy over obligations to

SREAEE.  (UTIER Compl. ¶¶ 209-216; SREAEE Compl. ¶¶ 181-95, 278.)

Section 201(c)(3) of PROMESA, 48 U.S.C. § 2141(c)(3), grants the Oversight

Board "sole discretion" to determine whether a fiscal plan complies with section 201(b)'s

requirements, and section 106(e) of PROMESA, 48 U.S.C. § 2126(e), makes the Oversight

Board's fiscal plan certification determinations unreviewable by this Court.  As the United States

Court of Appeals for the First Circuit has made clear, PROMESA "grants the [Oversight] Board

exclusive authority to certify Fiscal Plans and Territory Budgets for Puerto Rico.  It then insulates those certification decisions from judicial review."  See Ambac Assurance Corp. v. Commonwealth of P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 927 F.3d 597, 602 (1st Cir. 2019) (quoting Méndez-Núñez v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 916 F.3d 98, 112 (1st Cir. 2019)), cert. denied, 140 S. Ct. 856 (2020).

Section 201 of PROMESA does not provide the UTIER Plaintiffs or the SREAEE Plaintiffs with authority to challenge the Oversight Board's certification determinations.  Nor does it provide an independent basis for Plaintiffs' challenge of the O&M Agreement.  Section 201(b) applies to the development of fiscal plans, and does not govern the provisions of contracts.  Thus, the UTIER Plaintiffs and the SREAEE Plaintiffs have failed to articulate a cogent basis for their argument that the O&M Agreement violates PROMESA section 201(b).  Although the Plaintiffs argue that the Court has authority to review Oversight Board decisions to ensure that the Board is acting within the scope of its duties, any Court authority to do so is necessarily subject to the limitations imposed by PROMESA.  To the extent Plaintiffs seek to invoke section 201 of PROMESA through the First Claim for Relief as an independent basis to nullify the O&M Agreement or otherwise review its the terms of that agreement, the First Claim for Relief is dismissed pursuant to Rule 12(b)(6).  The Motions are granted as to the First Claim for Relief.

### 3.    Contracts Clause (the Fifth and Eighth Claims for Relief)

Article I, section 10 of the United States Constitution provides, in pertinent part, that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ."  The Plaintiffs insist that the O&M Agreement should be viewed as a law because it represents an "exertion of legislative power of the State."  (UTIER Opp. ¶ 83; SREAEE Opp. ¶ 73.)  The

Court has previously considered and rejected Plaintiffs' argument that the O&M Agreement is a law within the meaning of the Contracts Clause.  (PI Op. and Ord. at 21-22.)   In its opposition to the Motions, Plaintiffs suggest that any government action that results in the impairment of a contract violates the Contracts Clause.  (UTIER Opp. ¶ 83; SREAEE Opp. ¶ 73) (citing Arriaga v. Members of Board of Regents, 825 F. Supp. 1 (D. Mass. 1992)).  The Plaintiffs' reliance on Arriaga is misplaced.    The Contracts Clause, by its terms, applies only to measures that are state laws.  See Arriaga, 825 F. Supp. at 1, 4 (stating that, as "some exercise of legislative power is essential to implicate the Contracts Clause . . . , actions solely by executive officers affecting contractual rights would not, unless constituting the exercise of a delegated legislative function, involve a potential violation of the Contracts Clause" (citations omitted)).  As the court noted in Arriaga, enactment of legislation is a fundamental prerequisite to a claim under the Contracts Clause.  Arriaga, 825 F. Supp. at 1, 4.  Here, Plaintiffs cite no legislation that would give rise to a claim under the Contract Clause, and the O&M Agreement is not, itself, a law.

The mere fact that Plaintiffs allege that Defendants' actions breached contractual obligations under the CBA is insufficient to support a viable Contracts Clause claim.  Redondo Constr. Corp. v. Izquierdo, 662 F.3d 42, 48 (1st Cir. 2011) ("If a state breaches a contract but does not impair the counterparty's right to recover damages for the breach," in the event those damages would be owed, "the state has not impaired the obligation of the contract.").  See also Longo En-Tech Puerto Rico, Inc. v. United States Envtl. Prot. Agency, Civil No. 16-3151 (DRD), 2017 WL 878442, at *6 (D.P.R. Mar. 6, 2017).   As Defendants note, the Plaintiffs do not allege that they would be unable to sue for damages based on any purported breaches of the CBA.  (UTIER Reply ¶ 24; SREAEE Reply ¶ 25.)  Accordingly, the Motions are granted insofar as they seek dismissal pursuant to Rule 12(b)(6) of the Contracts Clause aspect of the Fifth and

Eighth Claims for relief.

    4.    <u>Interference with Contractual Relations (the Fourth Claim for Relief)</u>

Under Puerto Rico law, a claim for tortious interference with contractual relations must satisfy four elements. "To establish a tortious interference claim, plaintiffs need to show: 1) the existence of a contract; 2) that the interfering party acted with intent and knowledge of the existence of a contract; 3) that plaintiff suffered damages; and 4) that there exists a causal link between the injury and the interfering party's actions." <u>Alpha Biomedical and Diagnostic Corp. v. Philips Med. Sys. Netherland BV</u>, 828 F. Supp. 2d 425, 430 (D.P.R. 2011) (citing <u>New Comm Wireless Servs. v. SprintCom, Inc.</u>, 287 F.3d 1, 9 (1st Cir. 2002)). Significantly, a party cannot be liable for tortious interference with its own contract. See <u>Kunelius v. Town of Stow</u>, Civil Action No. 05-11697-GAO, 2008 WL 4372752, at *5 (D. Mass. Sept. 23, 2008), <u>aff'd</u>, 588 F.3d 1 (1st Cir. 2009). PREPA, which is a party to the CBA and the Trust Agreement,[20] thus cannot be liable for interfering with the CBA or the Trust Agreement. See <u>Kunelius</u>, 2008 WL 4372752, at *5.

    With respect to the third and fourth elements of their tortious interference claim, the Plaintiffs have not pled the impairment of any legally protected right through implementation of the O&M Agreement. Act 120 preserves PREPA employees' "vested rights in accordance with the laws, rules, collective bargaining agreements, and regulations applicable thereto, as well as the privileges, obligations, and status with respect to any existing pension or retirement plan[.]" 22 L.P.R.A. § 1121. Act 29 specifies that employees with ten or more years of employment with PREPA have "vested" retirement benefits that must be preserved. 27 L.P.R.A.

---

[20]    The Trust Agreement is annexed to the original UTIER Complaint. (Docket Entry No. 1-15 in Adv. Proc. No. 21-00041) (the "Trust Agreement").

§ 2609(g).  The O&M Agreement pledges compliance with these laws (while providing additional options for some employees with vested rights to participate in the LUMA Energy 401(k) plan.  (See O&M Agreement §§ 5.8(a), 9.1, 9.9.)

The Plaintiffs have failed to plead a violation of PREPA's obligations under the CBA or Trust Agreement and, to the extent they have raised a question as to whether they face damage by reason of deprivation of vested rights, they have failed to provide any authority for the proposition that any particular terms and conditions of their employment are vested.[21]  (See generally UTIER Compl.; SREAEE Compl.)  Nor have Plaintiffs identified any contractual right to perpetual employment by PREPA.  Thus, Plaintiffs have failed to plead that the O&M Agreement, under which persons are employed by LUMA rather than PREPA, or are shifted to employment in different capacities in other government entities, wreaks any tortious interference with the CBA or the Trust Agreement.  Accordingly, the Motions are granted pursuant to Rule 12(b)(6) as to the Fourth Claim because Plaintiffs have failed to state a claim for tortious interference with contractual relations between the Plaintiffs and the Defendants.

5.    Contracts in Prejudice to Third Parties (Third Claim for Relief)

---

[21]    The Court previously explained that Plaintiffs' reading of "vested" is unpersuasive.  (PI Op. and Ord. at 23.)  The Puerto Rico Legislature could simply have referred to "all rights" in Act 120 rather than "vested rights" if it had intended to shield all of the benefits of any given contract.  See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 353 (2013) ("Congress' choice of words is presumed to be deliberate . . . ."); New Prime Inc. v. Oliveira, 139 S. Ct. 532, 539 (2019) ("[I]t's a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary . . . meaning . . . at the time Congress enacted the statute." (internal quotation and citation omitted)).  Under Plaintiffs' reading of the statute, the word "vested" would be superfluous, and "it is a time-honored tenet that [a]ll words and provisions of statutes are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant, or superfluous."  Lopez-Soto v. Hawayek, 175 F.3d 170, 173 (1st Cir. 1999) (internal quotation omitted)).

Plaintiffs argue that Defendants entered into the O&M Agreement "in prejudice of a third party." (UTIER Compl. ¶¶ 217-22; SREAEE Compl. ¶ 117.) This tort requires the Plaintiffs to show (1) that a third person has been affected by the entry of other parties into a contract, (2) that said third person has sustained injury, (3) a causal nexus exists between the injury and the contract, and (4) that there is intent to cause injury, either by both contracting parties or by only one of them. Dennis and Metro Invs. v. City Fed. Savs. and Loan Ass'n., 121 D.P.R. 197, 201-02 (1988). (See Docket Entry No. 35-1 in Adv. Proc. No. 21-00041.) The Supreme Court of Puerto Rico, quoting a treatise, has defined "contract in the prejudice of a third person as follows: … [[C]ontract in the prejudice of a third person] refers to the hypothesis where at the execution of a contract, and precisely because of its execution, the contracting parties cause harm to a third person, whether they both did so knowingly or just one of them wished to do or was aware of the harm." Dennis and Metro Invs., 121 D.P.R. at 200-01 (citations and internal punctuation omitted). The Supreme Court went on to explain in that case that "to be a prejudiced third person not only must such person be a stranger to the contractual relation in question but he must also be "tied to the parties or to one of them by a juridical relation harmed by the same, or is dependent on the tortious cause and effect [of the] contract. Essential to this situation is the incompatibility between the juridical position of the injured third persons and the effects derived from the contract." Id. at 202 (citation and internal punctuation omitted).

Plaintiffs allege that P3, PREPA, and LUMA Energy entered into the O&M Agreement in prejudice of UTIER's members' rights "as [] active participants and beneficiaries [of SREAEE,]" under the CBA and the Trust Agreement. (UTIER Compl. ¶¶ 221-22; SREAEE Compl. ¶ 117.) The UTIER Plaintiffs' claim fails, however, for the same reasons Plaintiffs cannot show a tortious interference with contractual relations: the UTIER Plaintiffs have not

identified legally cognizable interests that were infringed through implementation of the O&M

Agreement.  Although the UTIER Plaintiffs allege that employees will lose certain rights under

the CBA, the O&M Agreement provides that LUMA Energy must comply with the legal

requirements contained in Act 120 and Act 29, and that LUMA Energy will recognize all

"vested" rights of PREPA employees.  (See O&M Agreement §§ 9.1, 9.9.)  Separately, the

SREAEE Plaintiffs allege that SREAEE participants may lose certain pension rights afforded

under SREAEE's regulations.  (SREAEE Compl. ¶ 92.)  The O&M agreement provides,

however, that while LUMA will not assume PREPA's obligations to SREAEE, LUMA "shall,

pursuant to Act 29, make any employer contributions it is permitted to make under Applicable

Law to [SREAEE] with respect to any Hired Former Employee of [PREPA] that elects to

continue participating in [SREAEE]."  (O&M Agreement § 5.8(a).)  Plaintiffs have not identified

any contractual provision or principle of law that will be violated by SREAEE's loss of

participants due to LUMA Energy's hiring of PREPA employees.  Accordingly, the Motions are

granted pursuant to Rule 12(b)(6) as to the Third Claim because Plaintiffs have failed to allege

facts sufficient to state a claim that Defendants entered into the O&M Agreement in prejudice of

a third party.

       In conclusion, the following claims are dismissed pursuant to Rule 12(b)(6) for

Plaintiffs' failure to state a claim upon which relief can be granted:  the portion of the First Claim

for Relief that seeks nullification of the O&M Agreement as violative of certain federal and

Puerto Rico law), Third Claim for Relief (contract in prejudice of a third-party), Fourth Claim

for Relief (tortious interference), Fifth Claim for Relief (Contracts Clause violation), Eighth

Claim for Relief (Act 29-2009 is unconstitutional).  Having found that the Plaintiffs fail to state a

claim upon which relief can be granted, it follows that Plaintiffs' requests for an injunction

(Tenth Claim for Relief) and award of damages (Eleventh Claim for Relief), must be denied.

III.

CONCLUSION

For the foregoing reasons, the Motions are granted, and the Complaints are dismissed in their entirety.  The Second Claim for Relief (the O&M Agreement is null and void because it constitutes a leonine obligation) and the Sixth Claim for Relief (the O&M Agreement's priority is null and void), are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).  The portions of the First Claim for Relief that seek nullification of the O&M Agreement based on Act No. 57, PREB's Regulation No. 8432, Act 17, Act No. 29, Act 83-1941, and ERISA are also dismissed pursuant to Rule 12(b)(1).  All claims asserted against the Government Party Defendants and Wayne Stensby are likewise dismissed pursuant to Rule 12(b)(1).

The following claims are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for Plaintiffs' failure to state a claim upon which relief can be granted: the remaining portion of the First Claim for Relief (O&M Agreement is null and void and violative of federal law), Third Claim for Relief (contract in prejudice of a third-party), Fourth Claim for Relief (tortious interference), Fifth Claim for Relief (Contracts Clause violation), Eighth Claim for Relief (Act 29-2009 is unconstitutional).  Plaintiffs requests for injunctive relief (Tenth Claim for Relief) and a monetary award of damages (Eleventh Claim for Relief) are denied.  The Cortland Objection is overruled as moot.

The Clerk of Court is directed to enter judgment accordingly and close the above-captioned adversary proceedings.

This Opinion and Order resolves Docket Entry No. 71 in Adv. Proc. No. 21-00041 and Docket Entry No. 13 in Adv. Proc. No. 21-00049.


SO ORDERED.

Dated: August 31, 2023

 /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge