UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO <u>et al.</u>,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>    Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |

## <u>MEDIATION TEAM'S NINETEENTH NOTICE AND REPORT</u>

To the Honorable United States District Judge Laura Taylor Swain:

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the: (i) Commonwealth of Puerto Rico (the "<u>Commonwealth</u>") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (v) Puerto Rico Public Buildings Authority ("<u>PBA</u>", and together with the Commonwealth, HTA, ERS, and PREPA, the "<u>Debtors</u>") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations). On October 30, 2024, the Title III case for the Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284-LTS) was closed.

121005740.2

PLEASE TAKE NOTICE that, on March 3, 2025, the Court entered its *Order Regarding PREPA Litigation Schedule* (the "Litigation Schedule Order").[2]  The Litigation Schedule Order directs the Mediation Parties[3] to meet and confer, with the Mediation Team[4] and as directed by the Mediation Team, as to the appropriate procedural vehicle(s) and timetable for litigation resolving issues related to the PREPA bondholders' claims, including the issues described by the Court in the Litigation Schedule Order.  The Litigation Schedule Order further directed the Mediation Team to "file the parties' joint proposed litigation schedule—or, if and only to the extent necessary, competing proposals—regarding mechanisms and a timetable for the resolutions of these issues . . . ."

## STATEMENT OF MEDIATION TEAM

1.      The Mediation Team respectfully submits this Nineteenth Notice and Report as a status report in accordance with the Litigation Schedule Order.

2.      After receipt of the Litigation Schedule Order, on March 6, 2025, the Mediation Team held an in-person meeting between and among the Mediation Parties, at which remote attendance was permitted for those unable to attend in person.  While the parties discussed for several hours their proposals for the appropriate procedural vehicles for resolution of the issues outlined by the Court in the Litigation Schedule, agreement was only reached on one narrow

---

[2]      Case No. 17-4780, Docket No. 5518.

[3]      The term "Mediation Parties" is defined in that certain *Order and Notice of Preliminary Designation of Mediation Team and Setting Deadlines for Objections to Membership* [Case No. 17-4780, Docket No. 2767] as: (a) the Oversight Board, (b) AAFAF, (c) the Ad Hoc Group, (d) National, (e) Assured, (f) Syncora, (g) UTIER, (h) SREAEE, (i) the Committee, and (j) PREPA's fuel line lenders.  Pursuant to that certain *Order Concerning Mediation Team's Tenth Notice and Report*, dated January 23, 2024 [Case No. 17-4780, Docket No. 4452], this Court acknowledged the dissolution of the Ad Hoc Group and the agreement of GoldenTree Asset Management LP, the PREPA Ad Hoc Group, and the Majority Member Ad Hoc Group to accept the Mediation Team's request to become Additional Parties to the Mediation.

[4]      The term "Mediation Team" refers to the Hon. Shelley C. Chapman (Ret.) and the Hon. Brendan Linehan Shannon, appointed by this Court on April 8, 2022 pursuant to the *Order Appointing Mediation Team* [Case No. 17-4780, Docket No. 2772].

121005740.2

point—the non-consenting bondholders will file their motion for allowance of administrative

expense claims on or before April 7, 2025.  Despite best efforts, no agreement was reached on

any other issues.  Following the meeting, the Mediation Team requested that the parties prepare

written submissions outlining their proposed procedural vehicles and timetables for resolution.

The submissions received by the Mediation Team are attached to this report as follows:

- Exhibit A – Oversight Board's Proposal
- Exhibit B – Non-Consenting Bondholders' Proposal
- Exhibit C – AAFAF's Proposal
- Exhibit D – Official Committee of Unsecured Creditors' Proposal
- Exhibit E – Assured Guaranty Inc.'s Proposed Addendum to the Non-Consenting Bondholders' Proposal

3.    The Mediation Team remains committed to finding a path forward.  A member

of the Mediation Team will be present at the omnibus hearing scheduled for March 19, 2025 to

answer any questions the Court may have.

Dated: March 13, 2025                    /s/ Hon. Shelley C. Chapman (Ret.)
                                         HON. SHELLEY C. CHAPMAN (RET.)
                                         Willkie Farr & Gallagher LLP

                                         /s/ Hon. Brendan L. Shannon
                                         HON. BRENDAN L. SHANNON
                                         United States Bankruptcy Judge

**<u>Exhibit A: Oversight Board's Proposal</u>**

**Oversight Board Proposed Litigation Vehicles and Schedule**
**March 11, 2025**

**I.     To carry out the Court's direction that the three pre-confirmation hearing issues identified in the Order dated March 3, 2025 be determined in a manner promoting judicial efficiency and economical use of Parties' resources, issues that may moot other issues must be determined before the other issues, and issues requiring discovery should be deferred to see whether those issues are still material after the rulings on legal issues.**

     **A.     Administrative Claim:**  Because the Non-Settling Bondholders' administrative claim for PREPA's alleged misuse of Net Revenues will be moot if it can only be paid from Net Revenues, and because even in the absence of the administrative claim PREPA's amended plan must pay bondholders the full value of Net Revenues securing their allowed claim, whether the administrative claim is recourse should be determined first and prior to any discovery.  In addition, there may be other purely legal issues that preclude the allowance of an administrative claim for PREPA's alleged misuse of Net Revenues.  The Non-Settling Bondholders should file their administrative claim, and the Oversight Board, as Title III representative of PREPA, and other parties in interest who oppose the relief sought by the Non-Settling Bondholders (collectively, the "Objecting Parties"), will file objections or motions to dismiss requesting its disallowance to the extent it asserts recourse or can otherwise be expunged or dismissed on purely legal grounds.  If the Court denies such objections/motions to dismiss, a schedule can be set for discovery and briefing on the Objecting Parties' objections to the merits of the claim, including whether any Net Revenues have been realized during the Title III case and whether PREPA used any such Net Revenues in violation of the Bankruptcy Code, the Trust Agreement or the Fifth Amendment.  Scheduling and settlement will be controlled by the Oversight Board, subject to Court approval.

     **B.     Legal and Categorical Expense Components of Current Expenses and Necessary Operating Expenses:**  The Non-Settling Bondholders already have secured claims on file.  The Oversight Board, as Title III representative of PREPA, will object to the claims on legal grounds and on the basis that the present value of the Net Revenues securing the claim (other than the monies in the bank accounts controlled by the bond trustee) is zero.  Parties in interest may file supplemental briefs in support of that objection.  We suggest the Court determine the claim objection in two phases if it desires to determine the expense issues before confirmation and the revenue issues during the confirmation hearing.  In the first phase, the Court can determine the legal issues pertaining to the application of Bankruptcy Code section 506 and the categories of expenses that constitute Current Expenses and necessary operating expenses deductible from Revenues under the Trust Agreement and/or Bankruptcy Code section 928(b), based on, among other things, those expenses set forth in the 2025 certified fiscal plan.  In the second phase, either at the confirmation hearing or in a separate Bankruptcy Rule 3012 proceeding, it can determine the value of the collateral constituting Net Revenues.  The foregoing procedure is clearly within the Court's subject matter jurisdiction, whereas an action to declare what cost categories are Current Expenses or necessary operating expenses is an unconstitutional advisory ruling, just as a declaration that certain revenues

are subject to liens was deemed an advisory ruling in *Aurelius Capital Master, Ltd. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.), 919 F.3d 638*, 645-647 (1ˢᵗ Cir. 2019).

**C.     Motion for Stay Relief:** The Court has already shown it will be making determinations necessary to determine the allowed amount of the Non-Settling Bondholders' administrative claim and secured claim, which must be paid in full for any PREPA Title III plan to be confirmable.  As shown by *Assured Guar. Corp. v. Fin. Oversight & Mgmt Bd. (In re Fin. Oversight & Mgmt Bd)*, 969 F.3d 170, 182 (1ˢᵗ Cir. 2021), the foregoing is cause to deny additional stay relief in the interest of judicial economy and efficient resolution of the litigation.

**D.     Motion to Dismiss PREPA Title III Case:**  The Oversight Board submits considering the dismissal of the PREPA Title III case into havoc and chaos when PREPA is proposing to pay in full the Non-Settling Bondholders' allowable claims, simply makes no sense.  Consideration of the motion should be deferred until and unless the Court determines there is no plan PREPA can propose that would be confirmable.

**E.     Accounting Claim**:  Because the First Circuit already determined it can only be paid from future Net Revenues, *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 121 F.4th 280, 315-316 (1st Cir. 2024) (rehearing denied), this claim will be moot if any PREPA plan is confirmed.  Therefore, its litigation should be deferred.

**F.     Commonwealth Objection to PREPA Bond Trustee Claim**:  To enable the Commonwealth to make distributions to non-financial general unsecured claimholders under its Title III plan, this litigation should proceed on at least one legal ground that may render further proceedings moot.

**G.     Litigation Stay**:  Based on the foregoing, the Oversight Board submits the litigation stay should be extended, but modified to carry out the Court's order dated March 3, 2025 by allowing the following matters to proceed on the schedule below.[1]

As an initial matter, PREPA will file its amended proposed Title III plan and proposed amended disclosure statement on **Friday, March 28, 2025 or such other date as the Court determines**.  The gating issues identified by the Court and otherwise requested by the Oversight Board shall proceed on the following schedule:

---

[1] Except as otherwise provided below, supporting parties to file papers on schedule set for Oversight Board's filings.

| DATE | Administrative Expense Claim | Determination of Net Revenues | Trustee's Claim Against the Commonwealth |
|---|---|---|---|
| **Monday, March 31, 2025** | | **The Oversight Board shall file an objection to the secured claim asserted in the Non-Settling bondholders' proofs of claim based on the debt sustainability in the 2025 certified fiscal plan, setting forth the Oversight Board's position (a) on projected expenses that are legally and categorically Current Expenses and/or necessary operating expenses and (b) purely legal issues. At the Court's discretion, other components of collateral valuation, including realizable Revenues, to be determined on a separate schedule to be directed by the Court or at confirmation.**<br><br>**Parties in interest supporting such claim objection may file supplemental briefs in support thereof no later than Thursday, April 3, 2025.** | |
| **Monday, April 7, 2025** | **Non-Settling bondholders shall file their reasonably detailed administrative claims, including specifying whether they are recourse claims.** | | **The Oversight Board shall file (i) a reply in support of its objection to the Bond Trustee's claim against the Commonwealth (ECF No. 25083, Case No. 17-03283) and (ii) motion to enforce the Commonwealth Plan of Adjustment's classification scheme against the Bond Trustee's Claim to the extent it is** |

| DATE | Administrative Expense Claim | Determination of Net Revenues | Trustee's Claim Against the Commonwealth |
|---|---|---|---|
| | | | assert to be classified in Class 58 of the Commonwealth Plan of Adjustment.<br><br>Parties in interest supporting such claim objection and/or motion to reclassify may file supplemental briefs in support thereof no later than Thursday, April 10, 2025. |
| Thursday, April 17, 2025 | | The Non-Settling Bondholders and other parties in interest shall file their responses to first phase of the Oversight Board's secured claim objection regarding categories of expenses and other legal issues raised by the Oversight Board.  The responses shall include a detailed statement listing which projected expenses they contend are neither Current Expenses under the Trust Agreement nor necessary operating expenses under Bankruptcy Code section 928(b). | |
| Monday, April 21, 2025 | The Objecting Parties shall file their objections to allowance of the administrative claim on purely legal grounds, including recourse.   The Court can order that the purely legal | | |

| DATE | Administrative Expense Claim | Determination of Net Revenues | Trustee's Claim Against the Commonwealth |
|---|---|---|---|
| | **issues be determined first because it will moot the merits issue, or pursuant to Bankruptcy Rule 9014(c) the Court can order application of Bankruptcy Rule 7012(b)(6), to enable the Objecting Parties to move to dismiss the administrative claim on purely legal grounds. Discovery and briefing on the other merits of the claim should be deferred until the purely legal issues are determined.** | | |
| **Monday, April 28, 2025** | | | **The Bond Trustee and other parties in interest shall file their responses to (i) the Oversight Board's objection to the Bond Trustee's claim and (ii) the motion to reclassify the Bond Trustee's claim to the extent it is asserted as classified in Class 58 of the Commonwealth Plan of Adjustment, including any supplemental briefs in support thereof.** |
| **Monday, May 5, 2025** | **Non-Settling bondholders shall file their response/objection to the Objecting Parties' objections** | **Oversight Board and other parties in interest shall file their replies in support of the claim objection as to expenses to be deducted from Revenues and other** | |

| DATE | Administrative Expense Claim | Determination of Net Revenues | Trustee's Claim Against the Commonwealth |
|---|---|---|---|
| | or motions to dismiss their administrative claim on purely legal grounds. | legal issues raised in its claim objection.<br><br>Oversight Board and other parties in interest shall file their expert report(s) explaining why any or all of PREPA's projected expenses are Current Expenses under the Trust Agreement or necessary operating expenses under Bankruptcy Code section 928(b).<br><br>Non-Settling bondholders and other parties interest shall file their expert report(s) explaining why any or all of PREPA's projected expenses are neither Current Expenses under the Trust Agreement nor necessary operating expenses under Bankruptcy Code section 928(b). | |
| Monday, May 12, 2025 | | | Oversight Board and other parties in interest shall file their replies to the Bond Trustee's responses to (i) the Oversight Board's objection to the Bond Trustee's claim and (ii) the motion to dismiss the Bond Trustee's claim to the extent it is asserted as classified in Class 58 of the Commonwealth Plan of Adjustment. |

| DATE | Administrative Expense Claim | Determination of Net Revenues | Trustee's Claim Against the Commonwealth |
|---|---|---|---|
| **Monday, May 19, 2025** | **The Objecting Parties shall file their replies in support of their objections/motions to dismiss the Non-Settling Bondholders' administrative expense claim.** | | |
| **Friday, May 23, 2025** | | **Oversight Board and other parties in interest shall file their expert report(s) responding to Non-Settling bondholders' expert report(s) concerning Current Expenses and necessary operating expenses.**<br><br>**Non-Settling bondholders and other parties in interest shall file their expert report(s) responding to Oversight Board's expert report(s) concerning Current Expenses and necessary operating expenses.** | |
| **Date to be determined** | | | **Court to Set Date for Hearing on (i) the Oversight Board's objection to the Bond Trustee's claim and (ii) the motion to dismiss the Bond Trustee's claim to the extent it asserts its claim is classified in Class 58 of the Commonwealth Plan of Adjustment. When the objection and/or motion are decided, the** |

| DATE | Administrative Expense Claim | Determination of Net Revenues | Trustee's Claim Against the Commonwealth |
|---|---|---|---|
| | | | Court and parties can determine whether and what further proceedings are necessary or moot. |
| **Tuesday May 27, 2025 through June 10, 2025** | | **Depositions of each expert, limited to six hours per expert** | |
| **Date to be determined** | **Court to set date for hearing on the Objecting Parties' objections/motions to dismiss Non-Settling bondholder's administrative claim on purely legal grounds.  When objection/motion is decided, the Court and parties can determine whether further proceedings on the administrative claim are necessary or moot.** | | |
| **Date to be determined** | | **Court to set date for hearing on Non-Settling Bondholders' Secured Claim, limited to (a) the determination of which projected expenses are Current Expenses and/or necessary operating expenses, and (b) any or all of the legal issues raised by the Oversight Board.** | |

| DATE | Administrative Expense Claim | Determination of Net Revenues | Trustee's Claim Against the Commonwealth |
|------|------------------------------|-------------------------------|------------------------------------------|
| **Date to be determined** | **No later than seven days after the later of the Court rulings on the legal issues with respect to the administrative claim, the Oversight Board shall file an informative motion advising the Court and all parties whether it needs to further amend its proposed Title III plan.** | **No later than seven days after the later of the Court rulings on the secured claim and the recourse issue on the administrative claims, the Oversight Board shall file an informative motion advising the Court and all parties whether it needs to further amend its proposed Title III plan.** | |

**TBD:   The Court shall set a schedule for hearings on the proposed disclosure statement, voting, and confirmation.**

## Exhibit B: Non-Consenting Bondholders' Proposal

| Litigation Regarding Administrative-Expense Claim, Stay-Relief Motion, And Accounting Counterclaim | |
|---|---|
| **April 7, 2025** | Bondholders file motion for administrative-expense claim.<br><br>Bondholders file renewed motion for relief from the automatic stay. |
| **April 7, 2025** | Board files answer to accounting counterclaim. |
| **April 18, 2025** | Serve RFPs to parties and third parties.  Responses and objections to these RFPs will be due within 10 days of service.<br><br>The parties shall be able to serve additional rounds of RFPs until the end of fact discovery.  Responses and Objections to such additional rounds shall be served within seven (7) days of service.<br><br>The parties shall have the right to serve Requests for Admission and up to 25 Interrogatories at any time up until 10 days prior to the Close of Fact Discovery.  The responses to Interrogatories and Requests for Admission shall be due 10 days after service.<br><br>Production of documents responsive to the RFPs shall be made on a rolling basis, such that document production is substantially complete by **June 2** |
| **April 30, 2025** | Board to file preliminary response to administrative expense motion.<br><br>Board to file objection to stay-relief motion. |
| **June 6, 2025** | Serve all deposition notices on fact witnesses |
| **June 13, 2025** | Submit privilege and redaction logs |
| **August 1, 2025** | End of fact discovery. |
| **August 8, 2025** | Identify opening experts and the topics of their expert reports. |
| **August 22, 2025** | Serve initial expert reports. |
| **August 29, 2025** | Identify rebuttal experts. |
| **September 19, 2025** | Serve rebuttal expert reports. |

| October 10, 2025 | Serve expert reply reports. |
|---|---|
| October 17, 2025 | Serve expert notices of deposition |
| November 20, 2025 | Complete expert depositions. |
| December 12, 2025 | Deadline for Bondholders to file supplemental briefs in support of administrative-expense motion and stay-relief motion; deadline for parties to file motions for summary judgment on accounting counterclaim. |
| January 12, 2026 | Deadline for Board to file responses to administrative-expense motion and stay-relief motion; deadline for responses to motions for summary judgment on accounting counterclaim. |
| February 2, 2026 | Deadline for Bondholders to file replies in support of administrative-expense motion and stay-relief motion; deadline for replies in support of motions for summary judgment on accounting counterclaim. |
| TBD | Hearing on administrative-expense motion, motion for relief from the automatic stay, and motions for summary judgment on accounting counterclaim. |

The Bondholders submit that this proposed schedule is the most efficient and effective way to litigate the issues that the Court identified in its March 3 Order.

The first issue that the Court identified—"what moneys, as a legal and categorical matter, constitute Net Revenues"—involves questions of both law and fact, including how PREPA has taken and spent the Net Revenues. Therefore, factual discovery is necessary to resolve that question. The Bondholders are entitled to this discovery because: (1) they are entitled to prove their administrative-expense claim, (2) the calculation and use of Net Revenues is exactly what is at issue in their accounting claim, which was reinstated by the First Circuit and, therefore, must proceed, (3) PREPA's historic treatment and calculation of Net Revenues is relevant as admissions regarding how to calculate Net Revenues and as a course of performance; and (4) the Board's refusal to accept the Net Revenue calculations set forth in its own financial reporting creates a factual issue on which discovery is necessary. The Board's position that it can avoid discovery simply by asserting that there were no Net Revenues taken—notwithstanding that its own business records admit there were billions of dollars of Net Revenues taken—is baseless.

Nor would resolution of the third issue that the Court identified—"the extent to which any such administrative expense claim must be paid out of moneys other than existing or future Net Revenues"—moot the administrative-expense claim or the Bondholders' entitlement to discovery because regardless of how the Court rules on that issue, the Bondholders will still be entitled to

discovery regarding the extent of "existing … Net Revenues" to pay the administrative-expense and accounting claims, and the Bondholders will be entitled to recover the Net Revenues taken by PREPA through disgorgement.  And, notably, this case will not be resolved until the amount of Net Revenues is determined, given the Board's incorrect position that there have been no Net Revenues and there will be no Net Revenues in the future.

**<u>Exhibit C: AAFAF Proposal</u>**

Judges Chapman and Shannon:

As you know, AAFAF continues to believe that the litigation stay should continue to allow substantive engagement in mediation once the mediators' financial advisors complete their diligence.  This is particularly true given the parties' divergent views as to a litigation path that will further the case.

However, if the Court determines to set a litigation schedule, AAFAF submits that because much of the burden of discovery will fall on PREPA, no discovery schedule should be set until the Court determines whether there are gating issues that may be addressed prior to any discovery and/or that may eliminate the need for discovery.

AAFAF further requests that for any responsive deadline to a Bondholder motion, parties other than the FOMB should be given a week after the FOMB's response deadline to file a joinder (in part or whole) or to assert additional arguments. Bondholder reply dates should key off that later date.

AAFAF reserves the right to provide additional comments to the FOMB proposal and to comment on the Bondholder proposal once received.

**<u>Exhibit D: Official Committee of Unsecured Creditors' Proposal</u>**

Judges Chapman and Shannon:

The Official Committee of Unsecured Creditors in PREPA's Title III Case (the "Committee")
supports the Oversight Board's position on how to most efficiently address certain gating legal
issues related to the amount, priority and validity of the claims asserted by the Non-Settling
Bondholders.  As outlined by the Oversight Board, there are three discrete legal issues that the
parties can brief in advance of confirmation that the Committee believes have the potential to
advance the ability of PREPA to prosecute and confirm its upcoming plan of adjustment and,
perhaps more importantly, whose resolution is consistent with the Court's March 3, 2025 Order
Regarding PREPA Litigation Schedule to address certain unresolved issues "in a manner that
promotes judicial efficiency and the economical use of parties' resources."

**<u>Exhibit E: Assured Guaranty Inc.'s Proposed Addendum to the Non-Consenting</u>**

**<u>Bondholders' Proposal</u>**

**PROPOSED ADDENDUM TO THE CO-OP BONDHOLDERS'
LITIGATION SCHEDULE FROM ASSURED GUARANTY INC.**

| New Adversary Proceeding for Declaratory Judgment | |
|---|---|
| April 7, 2025 | Bondholders file adversary proceeding to assert declaratory-judgment claim that the Bondholders' lien on future Net Revenues cannot be stripped under a plan of adjustment. |
| April 21, 2025 | Answer to declaratory-judgment claim due. |
| May 1, 2025 | Motions for summary judgment due. |
| June 2, 2025 | Oppositions to motions for summary judgments due. |
| June 24, 2025 | Replies in support of motions for summary judgment due. |
| TBD | Hearing on motions for summary judgment. |

Assured Guaranty Inc. joins the proposed litigation schedule that the Co-op Bondholders have submitted in full.

Additionally, Assured respectfully submits that, in order to comprehensively resolve the Court's first question—"what moneys, as a legal and categorical matter, constitute Net Revenues"—the Court should decide as a threshold matter whether the Bondholders' confirmed lien on future Net Revenues can be stripped under a plan of adjustment. Assured submits that the most efficient and effective method to accomplish the resolution of this question is through a new declaratory-judgment action, as outlined above.

The Board suggests that a declaratory-judgment action of this sort would not be justiciable, relying on *Aurelius Capital Master, Ltd. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 919 F.3d 638, 645-47 (1st Cir. 2019). But applying that decision's reasoning to the very different facts here *confirms* the existence of subject-matter jurisdiction over this declaratory-judgment action. In *Aurelius*, the First Circuit held that the district court lacked jurisdiction over a declaratory-judgment action because the declarations the litigants were seeking were "unrelated to any current concrete dispute, such as a claim objection proceeding" or other "confirmation-related proceeding." *Id.* at 647. The question whether the Bondholders' lien on future Net Revenues can be stripped through the restructuring process, by contrast, relates to every aspect of this proceeding. If the Bondholders' lien cannot be stripped, that has dramatic consequences for the structuring of a plan of adjustment and removes the need for any complicated valuation proceedings. Moreover, the Board has indicated that it desires to object to the Bondholders' claim—in fact, it already filed a claim objection to the PREPA Bond Trustee's proof of claim, *see* Adv. Proc. No. 19-391-LTS, ECF No. 26, Prayer for Relief (A), seeking virtually identical relief to that sought in its newest proposed claim objection—and the lien-stripping question is central to both objections. This declaratory-judgment action is thus firmly justiciable, and its resolution would facilitate the efficient resolution of PREPA's restructuring.